**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**v.**                            **Case No. 6:15-CR-45-ORL-41KRS**

**DOUGLAS SCHEELS,**

    **Defendant.**
_____/

**SENTENCING MEMORANDUM OF DOUGLAS SCHEELS**

Defendant Douglas Scheels, by and through his undersigned counsel, respectfully submits this sentencing memorandum in support of his request for a reasonable sentence that is sufficient, but not greater than necessary, to comply with the purposes set forth in Title 18 U.S.C. § 3553 (a)(2). Count One charges production of child pornography. Count Two charges receipt of child pornography. Scheels faces a mandatory minimum prison sentence of 15 years on count one and a maximum sentence of 30 years imprisonment. He faces a maximum sentence of 20 years on count two. Mr. Scheels agreed to be charged by way of a Superseding Information, waiving his right to a Grand Jury presentment and indictment. Additionally, he pled guilty, with a plea

1

agreement, to the charges contained in counts one and two of the Superseding Information. He has accepted responsibility for his crimes.

There is no excuse for the criminal activity committed by Mr. Scheels. The plea agreement sets forth the details of said activity over fourteen pages. It is a serious crime and Mr. Scheels knows he must be punished. He is sorry for the crimes he committed and stands ready to accept his punishment. According to the United States Probation Office, he has an advisory sentencing guideline range of life imprisonment and a maximum exposure of fifty years under the applicable statutes. He also faces a lengthy term of supervised release and a lifetime of reporting to the authorities as a sex offender.

Mr. Scheels understands that children depicted in child pornography are often abused and most certainly suffer mental and emotional trauma as a result of that abuse.

Given all of the relevant information, policies, and circumstances, including, but not limited to, the advisory guidelines and the factors set forth in § 3553(a), Mr. Scheels respectfully requests that this Court fashion a sentence below the advisory guideline range. Such a sentence will provide punishment that is sufficient, but not greater than necessary, to achieve the goals of sentencing.

2

## THE CIRCUMSTANCES OF THE OFFENSE

The circumstances of the offense in this case are set forth in the plea agreement and the pre-sentence report (PSR) prepared by the Probation Office.

## THE SENTENCING GUIDELINE CALCULATIONS[1]

For count one, the Probation Office calculated the total adjusted offense level as 42. For count two, the total adjusted offense level was calculated as 36. PSR ¶¶ 40; 50.

Based on the multiple count adjustment, as set forth in Chapter 3D of the United States Sentencing Guidelines, the Probation Office calculates two units, which result in an increase of two levels. Since the greater adjusted offense level is 42, the combined adjusted offense level becomes 44.

Pursuant to USSG §4B1.5(b)(1), there is an increase of five levels since there is a pattern of activity involving sexual conduct. With acceptance of responsibility, the total offense level is 43.

Mr. Scheels does not have any criminal history that is scored. *See* PSR, Part B. Thus, with a criminal history category I, Mr. Scheels' sentencing

---

[1] Due to the Court's Protective Order (*see* Doc. 20), the undersigned will not discuss the circumstances of the offense or detail the scoring of counts one and two, but will discuss the final total offense level and the unresolved objection that the undersigned has made to the PSR.

guideline range is life imprisonment, with a statutory maximum of 30 years on count one and 20 years for count two.

Mr. Scheels has filed objections to the scoring in the PSR. If the Court were to agree with these objections, his total offense level would be 42, with a criminal history of category I, making his sentencing range 30 years to life. (*See* PSR Addendum.)

### In Count One the Sadistic and Masochistic Enhancement Should Not Apply, Pursuant to USSG §2G2.1(b)(4)

Due to this Court's Protective Order, the undersigned would rely on its specific argument supporting said objections that were forwarded to the United States Probation Office and which are contained in the Addendum to the Final Presentence Report.

If the 4-level sadomasochism enhancement is removed for count one, the adjusted offense level for that count would be a 38 rather than a 42. The Defendant's adjusted offense level, in count two, is a 36. Using the grouping protocol, as set forth in Chapter 3D of the Sentencing Guidelines, the adjusted offense level after grouping would be 40 rather than a 44. Adjusting for the 5-level § 4B1.5(b) enhancement would result in a total offense level of 45. With acceptance of responsibility, the total offense level would be reduced to a level 42, placing the defendant in a guideline range of 30 years to life. (*See* PSR Addendum.)

4

## REQUEST FOR A REASONABLE SENTENCE

The Court is mandated to impose a sentence that is "sufficient, but not greater than necessary" by considering certain factors. *See* 18 U.S.C. § 3553(a). For purposes of this Argument, such factors include the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). In addition, the Court is to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

In this case, Mr. Scheels pled guilty to one count of producing child pornography involving a teenager and one count of receiving child pornography involving another teenager. As stated previously herein, these offenses are serious. Congress has recognized their seriousness by imposing a fifteen year mandatory minimum penalty for count one and a five year mandatory minimum penalty for count two. In the production count (count one), Mr. Scheels was not involved in causing child pornography to enter the "open" internet (i.e., the "marketplace") where the images would forever be available to those who wish to re-victimize the minors through viewing their images. The basis for federal jurisdiction in the production count, whose circumstances are separate and

5

distinct from the receipt count, is the mere fact a camera used to produce the images was made out-of-state. *See* Doc. 37 (Superseding Information). Thus, the basis for federal jurisdiction on the production count adds nothing extra to the harm to Mr. Scheels' count one victim already inherent in his conduct with her.  In this sense, the harm from the production count is on the same level as an adult who engages in federal statutory rape with a teenager where the location of the sexual activity, on federal property, likewise adds nothing extra to the harm already inflicted on the minor.  Yet, as will be established below, the punishment for such similar harms is largely disproportionate.

The federal basis for the receipt count, on the other hand, was the use of a cell phone messaging app to download child pornography in a closed communication that did not allow the images to enter the open internet, but did enter the internet nevertheless.  The punishment for the receipt count, however, is not being challenged here.

Accordingly, a "just" sentencing in this case should reflect the actual harm involved in the production count in order to eliminate disparity.  Because of this, this Argument will be focusing primarily on the production count, as the recommended Guidelines range for that count overstates the actual harm involved.  The recommended Guidelines range for the receipt count will be

6

incorporated in the final, overall analysis of total punishment.   Thus, a Guideline Range of 235-293 months (19 years, 7 months to 24 years, 5 months) is a more reasonable sentence, as detailed below.

In determining a reasonable sentence in this case, Mr. Scheels requests that this Court review similarly charged cases, i.e., cases where the charge was production of child pornography, that have been prosecuted in this District in recent years, as well as a case from outside of the district involving distribution and receipt of child pornography. Those cases are relevant to the determination of the seriousness of the activity in this case, as well as to the determination of any disparity in sentencing.[2]

For the production count, the government asks this Court to impose the statutory maximum 30-year sentence on Mr. Scheels. That is the same sentence the government recommended for the defendant in *United States v. Irey*, 612 F.3d 1160 (11th Cir. 2010) (6:06-cr-237-Orl-31DAB). The defendant in *Irey*, however, had more than 50 minor victims overseas, many under the age of 12 (some 4, 5, and 6 years old), who he tied up and sadistically raped with various objects, such as glow sticks, dildos, cockroaches, and candy), making them

---

[2] The undersigned understands that no two cases are alike and that the ultimate sentence is in the Court's sole discretion, after considering the advisory guidelines and the § 3553(a) factors.

scream in pain. The defendant in *Irey* would then upload those images and videos to a website, so much so that he created a series known as the "pink wall series." The defendant's conduct in the *Irey* case was deemed "the worst of the worst" by the majority of the Eleventh Circuit en banc court. *Irey* at 1220. Yet the defendant in *Irey* pled guilty to one count of production of child pornography and was sentenced to 30 years' imprisonment.

In *United States v. Dennis Devlin and Michael Ehmen*, 6:11-cr-56-Orl-28KRS, the two co-defendants were charged with production of child pornography. On two occasions, Ehmen persuaded a 13-year-old boy to engage in sexually explicit conduct in a motel room in Daytona Beach. While engaging in the sexual acts with the minor, co-defendant Devlin took sexually explicit pictures and a video of the child. Devlin instructed Ehmen and the child to get into a Jacuzzi and to masturbate until they ejaculated. Devlin offered a bonus to whoever ejaculated first; he videotaped the entire incident; and then he paid the child and Ehmen for their sexual activity. Devlin also paid Ehmen for bringing the child to him. After a search warrant, agents also found Devlin in possession of child pornography. *See* 6:11-cr-56-Orl-28KRS, Doc. 46, pages 14-16 (factual basis in plea agreement). Devlin was sentenced to 15 years in prison for his

acts, which included paying a minor to have sex on more than one occasion and videotaping the minor having sex.

In *United States v. Philip Beyel*,  6:12-cr-46-Orl-22DAB, the defendant sent a text message from his iPhone to a minor victim's iPhone. In the message, Beyel solicited the minor to have sex with him. He then went to the victim's home and took the victim to a hotel room. Beyel had sex with the minor and made a video of the sexual acts. Beyel later told the victim to lie to her doctor about having sex with him. Agents found several videos and photos of him having sex with the minor. *See* 6:12-cr-46-Orl-22DAB, Doc. 41, pages 15-16 (factual basis in plea agreement). Beyel was sentenced to 324 months for this sexual activity with a minor and the recording of said activity.

Last month, the former spokesperson for Subway Restaurants, Jared Fogle, in a plea agreement, agreed to plead guilty to one count of distributing and receiving child pornography <u>and</u> one count of traveling in interstate commerce to engage in commercial sex acts with a minor (*see* attached plea agreement, *United States v. Jared Fogle*, 1:15-cr-159-TWP-MJD, Southern District of Indiana). In the agreed upon facts of his plea agreement, Mr. Fogle admitted to the following:

1. On multiple occasions between 2011 to April 2015, Mr. Fogle received visual depictions of numerous minors engaging in sexually explicit

conduct from a known associate.  Mr. Fogle knew some of the minor victims depicted in those visual depictions.

2. Mr. Fogle knew his associate was secretly producing sexually explicit images and videos of minors and chose to obtain access a significant amount of it rather than reporting his associate's unlawful activities. None of the minors in the images or videos knew they were being filmed on hidden cameras.

3. Mr. Fogle's associate also obtained child pornography through the internet, including those with victims as young as six years of age, and provided them to Mr. Fogle.  Mr. Fogle displayed some of this child pornography to at least one other person.

4. On multiple occasions, Mr. Fogle obtained access to child pornography by viewing them on his associate's computer, by text messages and a thumb drive.

5. In the course of about three years, Mr. Fogle traveled to New York City from Indiana to have paid sex with minors.  He would repeatedly ask one of those minors and others to provide him access to other minors as young as 14 years of age for him to have paid sex.

6. The meetings for Mr. Fogle to have paid sex with minors were arranged through text messages and the internet.

7. Government investigation produced recordings of witnesses in at least three states showing Mr. Fogle repeatedly discussing his interest in engaging in paid sex with minors or having done so in the past.

8. Government investigation further revealed Mr. Fogle discussed paying prostitutes in various states a "finder's fee" to provide him access to minor for paid sex.  Mr. Fogle would have these discussions with prostitutes after having sex with them.

*See* Fogle plea agreement at pp. 13 – 18 (attached).

10

The *Irey* and *Fogle* cases establish a good contrast in which to measure the actual harm in this case where defendants in those cases were involved in the production of child pornography that was distributed through the internet, albeit in different contexts.

1.   Irey distributed photos he produced through an internet website. Despite this, Mr. Irey only received a 30-year sentence, which was the maximum possible sentence but one which the Court found was enough to "serve the sentencing purposes set out in § 3553(a)." *Irey* at 1222.

2.   Fogle encouraged distribution of child pornography, through the internet, that he knew was produced by an associate.

Fogle pleaded guilty to the Information that charged him with one count of distributing and receiving visual depictions of minor engaging in sexually explicit conduct in violation of 18 U.S.C.  § 2252(a)(2) and one count of traveling in interstate commerce to engage in commercial sex acts with minor in violation of 18 U.S.C. § 2423(b).  He is scheduled for a Change of Plea Hearing on November 19, 2015.  The agreed-upon facts for the guilty plea in that case established that for four years, Fogle received child pornography from a known associate who he knew secretly produced videos using real minors. Additionally, the known associate also obtained child pornography through the

11

internet and provided them to Fogle. Fogle also obtained access to child pornography by text messages and a thumb drive on his associate's computer. Finally, Fogle also had paid sex with multiple victims in separate and distinct criminal acts. *See* Fogle Plea Agreement at 13-18. Based on the agreed-upon facts, which Fogle agreed as satisfying the elements of both counts, Fogle faces a term of imprisonment between 60 to 240 months on count one, *id*. at 2, and zero to 360 months for count two, *id*. at 3. Thus, the total exposure to imprisonment is 60 to 600 months (five to fifty years). Despite having a maximum exposure to fifty years, as with Mr. Scheels. Yet, the Government in the Fogle case has agreed not to ask for a sentence greater than 151 months of imprisonment. *Id*. at 6. For his part, Fogle agreed not to ask for a sentence below 60 months (the mandatory minimum), *id*., and not to appeal any sentence of 151 of imprisonment or less. *Id*. at 20.

B. The trafficking of produced child pornography through the internet in *Irey* and *Fogle* forever harms children in a way that Mr. Scheels' conduct does not.

1. Trafficking of produced child pornography forever re-victimizes the minors involved.

12

In both *Irey* and *Fogle*, the produced images were trafficked using the internet, albeit in different ways. Mr. Irey mass distributed his produced child pornography through a website and Mr. Fogle encouraged distribution of produced child pornography through his associate.  In both cases, the market for child pornography was expanded to allow an unknown quantity of people to continually victimize the minors through future viewings of the minors' abuse. This is a harm beyond the the initial victimization of the minors that child pornography laws tries to prevent. As Courts and various professionals have recognized:

> [P]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution.  Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place.  A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography.  Shouvlin, Preventing the Sexual Exploitation of Children: A Model Act, 17 Wake Forest L.Rev. 535, 545 (1981). *See also* [Schoettle, Child Exploitation: A Study of Child Pornography, 19 J. Am. Acad. Child Psychiatry 289, 292 (1980)] ("[I]t is the fear of exposure and the tension of keeping the act secret that seem to have the most profound emotional repercussions"); Note, Protection of Children from Use in Pornography: Toward Constitutional and Enforceable Legislation, 12 U. Mich. J. Law Reform 295, 301 (1979) (interview with child psychiatrist)("The victim's knowledge of publication of the visual material increases the emotional and psychic harm suffered by the child").

*United States v. Pugh*, 515 F.3d 1179, 1195-96 (11th Cir. 2008)(quoting *New York v. Ferber*, 458 U.S. 747, 758–59 & nn. 9–10, (1982) (citations omitted)); s*ee also United States v. McGarity*, 669 F.3d 1218, 1267-68 (11th Cir. 2012) (finding that child pornography can constitute a "slow acid drip" of trauma, which may be exacerbated "each time an individual views an image depicting her abuse")(citing *United States v. McDaniel*, 631 F.3d 1204, 1209 (11th Cir. 2011)); *see also* Congressional Findings (2), notes following 18 U.S.C. § 2251 ("[W]here children are used in its production, child pornography permanently records the victim's abuse, and it's continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years").

      2.  In Mr. Scheels' case, the produced images have been largely contained.

Unlike a typical production case, Mr. Scheels did not traffic in any images he produced as charged in count one. All of the images involved in count one have been confiscated by law enforcement and have not been disseminated onto the open internet.   The harm contemplated by the child pornography statutes, therefore, was largely was contained. *See*, e.g. Congressional Findings Relating to Obscenity and Child Pornography (2), notes

14

following 18 U.S.C. § 2251 ("The prevention and sexual exploitation and abuse of children constitutes a government objective of surpassing importance and this interest extends to stamping out the vice of child pornography at all levels in the distribution chain") (internal quotes and citation omitted).  This is not to say there was little or no harm involved in this case, only that the harm was contained to only this case.  That is, there is no danger of the minor being re-victimized by an unknown quantity of strangers on the internet as is the case when produced child pornography is distributed, or caused to be distributed, through the open internet.

      3.   The fact that images were produced using a camera manufactured out-of-state does not add anything to the harm already done to the minor in the production count.

Without any distribution of the images, there was no new "market" of child pornography created by Mr. Scheels' conduct in count one.  Indeed, his conduct in Count One did not affect the child pornography market at all.  The interstate nexus in the production count case was solely because the materials used to produce the images were manufactured out-of-state. As the Eleventh Circuit noted: "We strongly suspect that it would be impossible in today's world to develop a picture without utilizing a material, somewhere down the line, that

originated beyond the borders of the state in which the picture was taken.")
*United States v. Maxwell*, 446 F.3d 1210, 1218 n. 8 (11th Cir. 2006).
Accordingly, the "harm" in this case is on the same level of "harm" that is
caused if Mr. Scheels had sexual contact with a teenager on federal property in
violation of  18 U.S.C. § 2243(a).

This is all to say there is very little to distinguish the relative, actual harm
between Mr. Scheels having sexual contact with a teenager on federal property
and him having sexual contact with a teenager and filming it as the
jurisdictional basis in both cases adds nothing to the harm.

If Mr. Scheels was prosecuted for having sex with a teenager on federal
property, his Guidelines score would be as follows:

Count One (statutory rape instead of child pornography production)
would result in a total offense level of 22 pursuant to USSG § 2A3.2.

Count Two would remain largely the same (i.e., BOL of 20 (reciept
without distribution), with SOC's of +4 (sadomasochism), +5 (pattern of
activity), +2 (use of computer), and +5 (over 600 images), resulting in an
Offense Level of 36 for Count two.

There would be no "stacking" penalty pursuant to USSG § 3D1.4(c) since
the offense level for Count One would be more than nine levels less serious

than the offense level for Count Two.  Accordingly the Offense Level would remain at 36.

However, five levels would then be added to the offense level pursuant to USSG § 4B1.5(b)(1) since statutory rape is a "Covered Sex Crime as Instant Offense of Conviction" pursuant to USSG § 4B1.5, comment. (n.2) (including all offense perpetrated against a minor under chapter 109A title 18).  The would result in an Offense Level of 41.

Accounting for three level off for acceptance of responsibility would result in a Total Offense Level of 38.

With zero Criminal History Points, Mr. Scheels would be at Offense Level 38, Criminal History Category I, for a recommended Guidelines range of 235-293 months (19 years, 7 months to 24 years, 5 months).

This guideline range would better account for the actual harm involved in this case, at least for Count One, as the somewhat arbitrary nature of what makes the production count more severe than actually having sex with a minor (i.e., that a picture was taken using a camera manufactured out-of-state).  This, in turn, would truly result in a sentence that is "sufficient, but not greater than necessary," 18 U.S.C. § 3553(a), to conform with purposes of sentencing. These include the need for the sentence imposed "to reflect the seriousness of

the offense, to promote respect for the law, and to provide just punishment for the offense," 18 U.S.C. § 3553(a)(2)(A), and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

### NEED FOR THE SENTENCE IMPOSED TO REFLECT THE SERIOUSNESS OF THE OFFENSE, TO PROMOTE RESPECT FOR THE LAW, AND TO PROVIDE JUST PUNISHMENT FOR THE OFFENSE

A sentence in the guideline range 235 to 293 months would reflect the seriousness of the offense and the congressionally mandated fifteen year mandatory penalty in count one and the five year minimum for count two. Such a sentence would afford deterrence. As to the specific deterrence of Mr. Scheels, it would mean that he would be nearly sixty years old when released from prison. At that age, Mr. Scheels would still be able to secure employment so that he could support himself and not be a burden on taxpayers. At that age, he would be less likely to recidivate. Additionally, he would have to serve a term of supervised release and would have to report as a sex offender.

As to general deterrence, a sentence in the range of 235 to 293 months would send a strong message that similar acts would bring a swift and sure punishment of at least two decades in federal prison.

It is anticipated that the Government will request a fifty-year sentence in this case. The undersigned would argue that a sentence of 235 to 293 months

would fulfill the mandates of providing just punishment, promoting respect for the law and protecting the public.

Mr. Scheels is 40 years old.  The average age of federal offenders is 40 years.  *See*  USSC, Quick Facts--Federal Offenders in Prison -- January 2015, http://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Quick-Facts_BOP.pdf.   The 2014 Sentencing Guidelines Sourcebook indicates that a "life sentence" is reported at 470 months (39 years, 2 months), which the Commission considers a "length consistent with the average life expectancy of federal criminal offenders given the average age of federal offenders."  *See*  United States Sentencing Commission, 2014 Sourcebook of Federal Sentencing Statistics, App. A, at 7, *available at* http://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2014/Appendix_A.pdf.  This is largely consistent with a recent report  published by the U.S. Department of Health and Human Services (HHS), Centers for Disease Control and Prevention (CDC), and the National Center for Health Services (NCHS) has found the average  life expectancy for males in the United States is 76.4 years.  *See* HHS/CDC/NCHS: Health, United States 2014: With Special Feature on Adults Aged 55-64 (2014)*,* http://www.cdc.gov/nchs/data/hus/hus14.pdf.   Accordingly, a sentence of 50 years in this case is effectively life in prison despite the statutory maximums.

19

It is important to note that Mr. Scheels decided to plead guilty in this case and did so by conceding numerous issues involved in both counts one and two. First, he waived his right to be charged by superseding indictment. This saved the Government time and resources in not having to prepare the case for the Grand Jury. Additionally, it saved the citizens of the Grand Jury from having to consider a presentation for a superseding indictment. Mr. Scheels also pled guilty using a plea agreement. In said agreement, he agreed to over 14 pages of facts. Said facts form the factual basis for Part A of the presentence report. By pleading guilty, and accepting responsibility, the Government did not have to prepare for trial, which would have consumed at least four days of this Court's trial time. Doc. 15. By not going to trial, the victims did not have to prepare for and to testify at trial. By not objecting to the sentencing facts, the victims do not have to prepare for factual disputes at a sentencing hearing.

Thus, Mr. Scheels has done everything possible to indicate his remorse for his criminal activity. His actions in this regard speak louder than any words could. Yet, even with the three level reduction for acceptance of responsibility, he is looking at a "life" sentence of fifty years in prison. U.S.S.G. § 3E1.1 contemplates that a defendant who accepts responsibility should get an appropriate reduction. However, said reduction means nothing to the system, as well as to other offenders, if the defendant will be sentenced to an actual "life" sentence whether he pleads guilty or goes to trial. Additionally, the factors of

20

"providing just punishment" and "promoting respect for the law" are frustrated if the actual sentence is the same whether the defendant pleads guilty or goes to trial.

Finally, as stated earlier, a sentence well below the guideline range will still protect the public. If the Defendant is given a sentence between 15 and 20 years, followed by a lengthy term of supervised release and mandatory reporting as a sex offender, the public will be adequately protected.

### HISTORY AND CHARACTERISTICS OF THE DEFENDANT

Mr. Scheels was the first son born to Ronald Scheels and Lenore Scheels. He has a younger brother, Clinton Scheels, who is a year younger than Douglas Scheels.  He is currently a firefighter in Orange City, Florida.

In 1977, when Douglas Scheels was two years old, the Scheels' family moved to Winter Springs Florida.  His father was able to transfer his job as a mailman to the Winter Springs Post Office. Although Ronald Scheels provided for his family financially, he was aloof and detached and played a very limited role in raising and nurturing his children. When Douglas Scheels was nine years old, his father committed suicide by shooting himself in the head in the backyard of the family home.  Douglas Scheels was in the neighborhood when

his father committed suicide. He grew up having to deal with his father's rejection during life and with feelings of abandonment after his father's death.

Ms. Scheels went back to work and dedicated her life to raising her two sons. Douglas Scheels attended public schools in Seminole County. He was placed in emotionally handicapped classes in the school system from 1985 through 19991. He graduated from Lyman High School in 1994. Upon graduation, Scheels was employed by Ahoy Marine, Inc. and Datamax Corporation in Sanford.

In 1997, Scheels left home at age 22, to enlist in the U.S. Marine Corps. After serving four years, he was ranked as an E-3, Lance Corporal, at the time of his separation. *See* Exhibit 3. Scheels' military records reflect he received an Honorable Discharge in 2002. *Id*. While serving in the Marine Corps, he received a Meritorious Unit Commendation, Sea Service Deployment Ribbon, Certificate of Commendation, Letter of Appreciation, and a Marksman Rifle Badge. *Id*.

During his military career, he was stationed at bases in Pensacola, Florida, Okinawa, Japan, and at the end of his service in San Diego, California. Scheels also received the Marine Corps Good Conduct Medal.

22

The United States Supreme Court in *Porter v. McCullom*, 130 S. Ct. 447 (2009), held that a sentencing court can consider a defendant's military service as a mitigating factor at sentencing. In the instant case, Mr. Scheels enlisted in the Marine Corps and served for five years. The pride Mr. Scheels had in being a marine is reflected on his face upon graduation from basic training (see attached photographs). While in the Marines, he received a good conduct medal and served with distinction. He voluntarily left the service after five years and was honorably discharged in 2002.

He left the military in 2002 to stay home full time with his children while his wife entered the work force and was employed full time. Scheels home-schooled both of his children through their elementary and middle school classes and performed household duties.

Lenore Scheels has written a letter on behalf of her son. Friends of Douglas Scheels have also written letters of support. They are attached hereto.

## CONCLUSION

Obviously, Mr. Scheels must be punished for his crime. Given his life history and lack of any prior incarceration, a sentence of 15 - 20 years' imprisonment is an appropriate and reasonable sentence.  He will have a

lifetime of reporting to the authorities, as a sex offender.   He will serve a lengthy term of supervised release.

### CERTIFICATE OF SERVICE

I hereby certify that undersigned attorney electronically filed the foregoing sentencing memorandum with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to Assistant United States Attorney J. Bishop Ravenel this 9th day of November 2015.

Respectfully Submitted,

Donna Lee Elm
Federal Defender

*/s/James T. Skuthan*
James T. Skuthan
First Assistant Federal Defender
Florida Bar Number 0544124
201 S. Orange Avenue, Suite 300
Orlando, Florida 32801
Telephone: 407-648-6338
Facsimile: 407-648-6095
Email: jim_skuthan@fd.org
Attorney for Douglas Scheels