1                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
2                         ORLANDO DIVISION

3

UNITED STATES OF AMERICA,      )
4                              )
         Plaintiff,            )          Case Number
5                              )
              v.               )      6:15-cr-45-Orl-41KRS
6                              )
DOUGLAS SCHEELS,               )
7                              )
         Defendant.            )
8    _____)

9

10

11          Transcript of an excerpt of the sentencing

12          before the Honorable Carlos E. Mendoza

13              November 16, 2015; 9:00 a.m.

14                      Orlando, Florida

15

16

Appearances:
17
Counsel for Plaintiff:  J. Bishop Ravenel
18

19   Counsel for Defendant:  James T. Skuthan

20

21       Proceedings recorded by mechanical stenography,
     transcript produced by computer.
22    _____

23                  Diane Peede, RMR, CRR
                 Federal Official Court Reporter
24          401 West Central Boulevard, Suite 4600
                    Orlando, Florida  32801

25

1                           Index of transcript

2                                                           Page

3                         Rodney James Hyre
    Direct by Mr. Ravenel                                    16
4   Cross by Mr. Skuthan                                     26

5

6

7

8

9                     - - - - - - - -

10

11

12

13                    Exhibits in evidence
    Government's 1                                           18

14

15

16

17

18

19

20

21

22

23

24

25

1           **P R O C E E D I N G S**

2           THE COURTROOM DEPUTY:  This is the case of United

3   States of America versus Douglas Scheels, case number 6:15-

4   cr-45.

5           Will counsel please state their appearances for the

6   record.

7           MR. RAVENEL:  Good morning, Your Honor.  Bishop

8   Ravenel for the United States.  With me is Rodney Hyre with

9   the F.B.I.

10          MR. SKUTHAN:  Good morning, Your Honor.  James

11  Skuthan on behalf of Mr. Douglas Scheels.  Also present at

12  the table behind me is David Espirito, a paralegal from our

13  office.

14          THE COURT:  Thank you.

15          Mr. Skuthan, if you and your client would be kind

16  enough to approach the podium, we'll get started.

17          Mr. Scheels, go on ahead and raise your right hand.

18  You're going to be placed under oath at this time.

19          THE COURTROOM DEPUTY:  Do you solemnly swear or

20  affirm under the penalty of perjury that the testimony you

21  will give will be the truth, the whole truth and nothing but

22  the truth?

23          THE DEFENDANT:  Yes.

24          DOUGLAS SCHEELS, SWORN

25          THE COURT:  Please state your full name for the

1    record.

2            THE DEFENDANT:  Douglas Scheels.

3            THE COURT:  Sir, are you under the influence of

4    alcohol, prescribed medication or any narcotics that may

5    affect your ability to understand these proceedings?

6            THE DEFENDANT:  I don't believe so.

7            THE COURT:  Is there a possibility or is that your

8    way of telling me no?  Are you having any trouble

9    understanding anything or is there anything that you've taken

10   in the last 24 or 48 hours to give rise to concerns on your

11   part that you might have trouble understanding these

12   proceedings?

13           THE DEFENDANT:  Pain -- pain medication but that's

14   it.

15           THE COURT:  Okay.

16           Mr. Skuthan, are you having any trouble

17   communicating with your client this morning?

18           MR. SKUTHAN:  No, Your Honor.

19           THE COURT:  Okay.

20           Mr. Scheels, on June 18, 2015, you entered a plea

21   of guilty as to Count One of the Superseding Information,

22   charging you with production of child pornography, in

23   violation of Title 18, U.S. Code, Section 2251(a) and (e),

24   and Count Two of the Superseding Information, charging you

25   with the receipt of child pornography, in violation of

1   Title 18, U.S. Code, Section 2252A(a)(2) and (b)(1).  The

2   Court has previously accepted your guilty plea and adjudges

3   you guilty of those offenses.

4          We have now reached the stage in the proceedings

5   where it is my duty to address several questions to you, your

6   attorney and counsel for the government.

7          Mr. Scheels, there was a Presentence Investigation

8   Report that was created in preparation for sentencing.  Have

9   you had a chance to review that document?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Have you had a chance to review that

12   document with the benefit of your attorney's assistance?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Do you need any more time to review

15   that document?

16          THE DEFENDANT:  No.

17          THE COURT:  And this question is for your attorney

18   first.

19          Do you have any objections as to the factual

20   accuracy of the report?

21          MR. SKUTHAN:  Your Honor, we did file objections

22   based on the legal principle; and, additionally, there were

23   paragraphs regarding Mr. Scheels' personal background that we

24   submitted as part of the sealed documents.  In other words,

25   paragraphs -- I believe it's 66 through 73 that we provided

1    sealed information regarding his personal background as well

2    as other sealed documents.

3              THE COURT:  All right.  I appreciate that.  Other

4    than that, do you have any objections as to the factual

5    assertions made in the investigation?

6              MR. SKUTHAN:  In the P.S.R., no, Your Honor.

7              THE COURT:  Okay.  And, also, do you have any

8    objections as to the probation officer's application of the

9    guidelines other than what you've already stated, which I'm

10   going to hear argument on here briefly?

11             MR. SKUTHAN:  No, Your Honor.

12             THE COURT:  All right.

13             The same question for the government:  Any

14   objections as to the factual statements in the investigation?

15             MR. RAVENEL:  No, sir.

16             THE COURT:  All right.  Mr. Scheels, feel free to

17   be seated at counsel table.  I'm going to take up some legal

18   matters with the attorneys before we move on to the

19   mitigation and aggravation portion of the sentencing.

20             Mr. Skuthan, would you like to supplement your

21   filings with any further oral argument at this time?  I mean,

22   you have some concerns that were addressed at a previous

23   status conference we had with regard to how the case is being

24   scored at this time.

25             MR. SKUTHAN:  Well, we did file a sentencing memo

1    and we also filed objections to the Presentence Report, and

2    the Presentence Report objections are attached to the

3    addendum in which we outlined the objection.

4         There were two objections that were made.  If I

5    could refer the Court to the P.S.R., as the Court is aware,

6    the document itself contains the probation officer's

7    evaluation of the objections as well as a copy of my

8    objections, which are on pages 22, 23 and 24 of the

9    Presentence Report.

10        THE COURT:  Right.  You're objecting as to

11   paragraph 34 and 40.  That's where the objections lie, and

12   I've had a chance to review those.

13        Do you want to further supplement the record with

14   any oral argument further in support of those objections?

15        MR. SKUTHAN:  I don't think anything needs to be

16   stated in addition to what I've already stated.  I just want

17   to make clear that we did object on Count Two for the offense

18   level being 22 and we felt it should have been 20, and the

19   government agreed with us.  So probation corrected that in

20   the P.S.R.

21        Then we objected to paragraph 34, not on any of the

22   facts, just on the legal interpretation, and the government

23   disagrees with us.  So that's the only unresolved objection,

24   Your Honor.

25        THE COURT:  I know the government's going to make

1   this argument.  So let me ask you about it.  On page 32 of

2   the Plea Agreement -- and Mr. Ravenel alluded to this the

3   last time we were in court -- there was an agreement on the

4   guidelines where the parties agreed that the below-sentencing

5   guidelines provisions, albeit not necessarily a comprehensive

6   list, are supported by the facts in this case, where it was

7   agreed upon that under Counts One and Two, that those

8   sadistic and masochistic conduct points would be added.

9          So he sort of alluded to the fact that there could

10  be a basis to -- this argument would have some sort of

11  negative impact on the acceptance of responsibility points.

12         How would you respond to what I'm sure is going to

13  be their argument right now?

14         MR. SKUTHAN:  Well, I can respond twofold, Your

15  Honor.  If you look at page 16 of the Plea Agreement under

16  Factual Basis, which is paragraph eleven on page 16, it says

17  the defendant is pleading guilty because he is in fact

18  guilty.  He certifies and he hereby admits that the facts set

19  forth in the attached factual basis, which is incorporated

20  herein by reference, are true; and if this case were to go to

21  trial, the United States would be able to prove those facts

22  and others beyond a reasonable doubt.

23         If the Court would go to page 32 of the Plea

24  Agreement -- and as the Court is aware, the Factual Basis

25  starts on page 18.  So it's 14 pages.  It's exhaustive.  It

covers anything you could possibly cover.

And it says right before United States Sentencing
Guidelines, it says Scheels admits that the facts above,
including those provided by witnesses and victims in this
case, are true and accurate.  So Mr. Scheels agreed to all 14
pages of facts.

Now, underneath that where it says Sentencing
Guidelines, there's two issues:  The first issue is the
sadistic and masochistic enhancement; and then the second one
is under Count Two for receipt, where the base offense level,
it says 22, and our objections, we objected, said that should
be 20, and the government agreed with us.

So the government did agree that even though
something was included, that it was more appropriate to have
a level 20 because the facts did not support a level 22.
These are legal arguments.  The defendant has admitted to all
of the facts in paragraphs 18 through 22.

And on page 32, he says Scheels admits that all of
the facts above, including those provided by witnesses and
victims in this case, are true and a accurate.  So he's
admitted to every single one of those facts.

I think a legal interpretation is somewhat
different.  I viewed the facts in this case and I came to a
conclusion, based on my ethical obligation as a lawyer, to
make two objections; and the government agreed with one of

those objections and didn't say on that objection, well,

you're bound by the agreement.

So I would submit to the Court that when parties

make an agreement, the attorneys can make an agreement as to

the sentencing guideline range. The defendants are not

necessarily aware of all the nuances of the legal terms and

what constitutes an enhancement. And as previously stated,

the government agreed with us on Count Two for receipt.

I've never seen a more detailed Plea Agreement

regarding facts and what a defendant admitted to, and he

admitted to all those facts as a part of his Plea Agreement.

THE COURT: Thank you, Mr. Skuthan.

MR. SKUTHAN: Thank you, Your Honor.

THE COURT: I appreciate that clarification.

Mr. Ravenel, would you like to make an argument

based on what was just argued before the Court?

MR. RAVENEL: Your Honor, it was a negotiated Plea

Agreement. He certainly got a benefit of not being charged

with additional counts. He definitely took that benefit; but

now he's trying to back off of an enhancement, which does

cause his guidelines to be life, capped at 50 years. He

received the benefit, but now he doesn't want to stand by his

agreement.

With respect to this, I'm making that legal

argument; but I'm also going to present evidence, Your Honor,

1    so there is an evidentiary basis for denying that

2    objection -- or overruling that objection, rather.

3           THE COURT:  All right.  I appreciate that.

4           And we have our probation officer here today?

5           MR. RAVENEL:  We do.

6           THE COURT:  If you wouldn't mind coming forward to

7    the podium, I have a few questions for you as well.

8           I'm just focused on Count Two, the base offense

9    level.  It's your understanding that both counsel agreed that

10    we should have started at a base offense level of 20 instead

11    of 22, correct?

12           THE PROBATION OFFICER:  Yes, Your Honor.

13           THE COURT:  Okay.  So that would put us at an

14    overall offense level, a total offense level of what number?

15           THE PROBATION OFFICER:  Forty-three.

16           THE COURT:  Okay.  And that's criminal history

17    category I, 600 months of imprisonment, five years to life

18    supervised release, a 25,000 to $250,000 fine, and a $200

19    special assessment?

20           THE PROBATION OFFICER:  Yes, Your Honor.

21           THE COURT:  Okay.  I just wanted to confirm that

22    with you.  Thank you for that.

23           THE PROBATION OFFICER:  Thank you, Your Honor.

24           THE COURT:  The government indicated at the prior

25    proceeding that in order, if necessary, to -- and I'm not

 1    going to tell you what you need to do.  You can make your own

 2    decision on that.  But I understand what your argument is

 3    that on -- and I understand Mr. Skuthan's thoughtful

 4    arguments here.

 5              But it's your position that, based on the change of

 6    plea hearing where I went over the entirety of this

 7    particular document, to include the 32 pages on the back

 8    where the defendant's initials were placed, that it's your

 9    argument that it's established.

10              You indicated that you were going to consider the

11    possibility of introducing actual physical evidence some in

12    support of your assertion.  Is that something you intend on

13    doing here this morning before the Court makes a decision?

14              MR. RAVENEL:  I do, and I do that in order to

15    perfect the record, Your Honor.

16              THE COURT:  All right.  If you would like to

17    proceed with the presentation of that evidence, you're

18    invited to do so.

19              MR. RAVENEL:  Your Honor, I have five witnesses to

20    call today.  Four of those witnesses are a victim witness or

21    people that are going to provide information by way of victim

22    impact statements.

23              And I have spoken to Mr. Skuthan, and I don't have

24    any objection to the court being closed and that portion of

25    the proceeding being sealed.  The reason for that is if they

were to write a document and it would be titled A Victim

Impact Statement, we would certainly submit that under seal.

The fact that the manner of presentation is by

testimony or by allocution from the podium doesn't change the

fact that that would be under seal.

So for those four witnesses, I think counsel agrees

with me that the courtroom should be closed and that should

be submitted under seal pursuant to 3509.

THE COURT:  All right.  I'm not going to get in the

way of a thoughtful agreement between counsel; but I have to

let you know that upon reviewing the entire record this

weekend in preparation for today, it's going to be very

difficult from my perspective not to consider at least as

part of the record some what I consider critical variables in

determining what the appropriate sentence would be, and I

fear that I may step on my own order in doing so.

I will make every attempt to try to be as

non-descript as I am able, but I don't know that I'm going to

be able to accomplish that because there's some very

important details in this case that I think are going to be

something I'm going to be relying on in determining the

appropriate sentence.

So I understand.  I don't have any problem with

that; but from my perspective, I don't know that I'm going to

be able to -- I'll do everything I can, but I'm going to be

1   real close to the line on this.

2           All right.  That being the case, I'll make a

3   determination as to what the guidelines are going to be

4   because I don't want to do the same thing twice.  So what I'm

5   going to do is allow you both an opportunity to mitigate and

6   aggravate the circumstances, but you seem to indicate that

7   you have one package presentation that you want to submit to

8   the Court.

9           My thoughts initially were that we would limit the

10  presentation at this point to your attempt to establish or to

11  perfect the record with regard to the sadistic or masochistic

12  conduct, but you seem to be inclined to make your entire

13  presentation at one time.

14          MR. RAVENEL:  It's however the Court wants me to

15  proceed.  If you want to address the guidelines first, I can

16  call Special Agent Hyre and we can do that now.

17          THE COURT:  Is that something that can be broken

18  off and presented independently?

19          MR. RAVENEL:  Yes, sir.  Absolutely.

20          THE COURT:  Let's do that first, then.

21          MR. RAVENEL:  Yes, sir.  I call Special Agent Rod

22  Hyre, Your Honor.

23          THE COURTROOM DEPUTY:  Please come forward and be

24  sworn.

25          Do you solemnly swear or affirm under the penalty

1    of perjury that the testimony you will give will be the

2    truth, the whole truth and nothing but the truth?

3                    AGENT HYRE:  Yes, ma'am.

4                    RODNEY JAMES HYRE, PLAINTIFF'S WITNESS, SWORN

5                    THE COURTROOM DEPUTY:  Have a seat there, please.

6                    THE COURT:  Once seated, please arrange the chair

7    so that you're comfortable with the chair's proximity to the

8    microphone; and then loudly and clearly please state your

9    name into that microphone.

10                   THE WITNESS:  Rodney James Hyre.

11                   THE COURT:  You do have a voice that carries.

12   Please lean back.  The earphones are very loud.

13                   THE WITNESS:  Yes, sir.

14                   MR. RAVENEL:  Your Honor, may I approach your clerk

15   and the witness as well?

16                   THE COURT:  Sure.

17                   Go on ahead and state your full name, spelling your

18   last name for the record.

19                   THE WITNESS:  Rodney James Hyre, H-y-r-e.

20                   THE COURT:  All right.  Your witness, counsel.

21                   MR. RAVENEL:  I have a copy of the exhibit for the

22   Court.  I've also provided one to defense counsel, Your

23   Honor.

24                   THE COURT:  All right.  I'm not going to look at

25   any exhibits until you ask that they be admitted, unless I

```
 1   need to look at them for the purposes of admission.

 2              Have these items been provided to your opposing

 3   counsel?

 4              MR. RAVENEL:  Yes, sir, they have.

 5              THE COURT:  All right.  Feel free to proceed.

 6                        DIRECT EXAMINATION

 7   BY MR. RAVENEL:

 8   Q    What do you do for a living?

 9   A    I'm a Special Agent with the F.B.I.  I'm based here in

10   Orlando, Florida.

11   Q    What types of investigations do you work on?

12   A    Currently I'm the coordinator for the Violent Crimes

13   Against Children and Innocent Images investigations, the

14   sexual exploitation of children.

15   Q    During the course of your duties did you come in contact

16   with Douglas Scheels?

17   A    Yes, sir.

18   Q    Do you see him in court today?

19   A    I do.

20   Q    Point him out and describe what he's wearing.

21   A    He's sitting next to Mr. Skuthan.  He's wearing a blue

22   jumpsuit.

23              MR. RAVENEL:  Your Honor, the record should reflect

24   the witness identified the defendant.

25              THE COURT:  The record will so reflect.
```

1   BY MR. RAVENEL:

2   Q    Do you understand you're testifying today for the

3   purpose of establishing an evidentiary basis to support a

4   sadistic/masochistic enhancement with respect to Minor Victim

5   One?

6   A    Yes.

7   Q    Do you have evidence of that with you today?

8   A    I do.

9   Q    I have before you a sealed document, an exhibit that

10  will be filed under seal pursuant to 18, U.S.C. 3509.  It's a

11  series of photographs.  Can you describe what that is?

12  A    This was a series of photographs that were recovered

13  from computer media taken from Mr. Scheels' house in January

14  of 2015.  These specific images, there were 113 images -- I'm

15  sorry.  These specific images came from a tablet computer off

16  of a PNY SD card.

17  Q    Are you able to determine, based on the information

18  attached to those photographs, electronically when they were

19  produced?

20  A    Yes, sir.  Digital images come with EXIF data and the

21  EXIF data will show you things such as aperture settings,

22  brightness, shutter speed, but it also shows you the time and

23  date that the images were taken.

24  Q    What do these images generally relate to?

25  A    The images in this exhibit show Mr. Scheels and Minor

1    Victim One engaged in sadomasochistic behavior.

2              MR. SKUTHAN:  We would object.  That's the issue

3    for the Court to decide.

4              THE COURT:  And I'm going to disregard any

5    conclusory testimony.  He is correct; that's my decision.

6    And your objection is sustained.

7              MR. SKUTHAN:  Thank you.

8              MR. RAVENEL:  We'd offer Government's Exhibit 1

9    into evidence under seal, pursuant to 18, U.S.C., 3509.  The

10   reason I'm offering it under seal is to prevent the

11   identification of Minor Victim One.

12             THE COURT:  Will there be any objection from the

13   defense?

14             MR. SKUTHAN:  No objection, Your Honor.

15             THE COURT:  All right.  Without objection, what's

16   been previously marked as Government's Exhibit 1 will be

17   admitted and marked as such.

18   BY MR. RAVENEL:

19   Q    I want to walk through the photographs and have you

20   discuss them.  What does the first photograph show?

21   A    The first photograph shows a picture of Mr. Scheels with

22   a plastic bag taken over -- pulled over top of his head and

23   the picture was taken on October 19th of 2014.

24   Q    What does the second photograph show?

25   A    It shows Mr. Scheels holding what appears to be a whip.

1       MR. SKUTHAN:  Objection as to "appears to be," Your

2   Honor.

3   BY MR. RAVENEL:

4   Q    Do you know what the object is in --

5       THE COURT:  All right.  That objection will be

6   sustained.  You can rephrase.

7   BY MR. RAVENEL:

8   Q    Do you know what the object is in the person's hand?

9   A    To me, it looks like a -- it looks like a riding crop.

10      MR. SKUTHAN:  The same objection, Your Honor.

11      THE COURT:  All right.  I'm going to allow that

12  particular testimony with the limitations I'll come to my own

13  conclusion as to what it is.

14  BY MR. RAVENEL:

15  Q    What date was that photograph taken?

16  A    That picture was taken on November 1st of 2014.

17  Q    What does the next photograph show?

18  A    A picture of Mr. Scheels' tongue and the tongue is

19  bleeding.

20  Q    What's the date of that photograph?

21  A    That was on November 3rd of 2014.

22  Q    Based on your investigation, did you come across any

23  evidence of Mr. Scheels being a person that engaged in

24  self-mutilation?

25  A    Yes.  During interviews with Minor Victim Number Two, it

1   was expressed that Mr. Scheels took part in self-mutilation.

2   Q    What's the next photograph show?

3   A    It's a picture of Mr. Scheels' face and it was taken on

4   November 4th of 2014.

5         MR. SKUTHAN:  Your Honor, if Mr. Ravenel could

6   identify each picture by either letter or number, that might

7   be helpful.  I believe the last one was number four.

8         MR. RAVENEL:  Sure.

9         THE COURT:  All right.

10  BY MR. RAVENEL:

11  Q    Turning to photograph number five through the remaining

12  of the photographs, what date were those photographs taken

13  on?

14  A    The remaining photographs are taken -- there were 113 in

15  total.  They were taken on November 5th of 2014, starting at

16  12:24 p.m. and ending at 2:07 p.m.

17  Q    You have -- in this remaining package of photos you have

18  a large blown-up photo and then you have a document behind

19  that photo.  Can you explain that for the Court?

20  A    Yes, sir.  The large photo is to make it easier to see

21  exactly what is in the picture.  The secondary piece of paper

22  shows you the EXIF data associated with that specific photo.

23  Q    Explain what's shown in the EXIF data page.

24  A    It shows you the name of the image, which is ending in

25  .jpj; and then it'll show you the time that it was created on

1    the piece of media that we recovered.  In this case this

2    first picture was taken on November 5th, 2014, at 12:24 and

3    30 seconds.

4    Q    The next five photographs, what do those photographs

5    show, photographs five through nine?

6    A    They show Mr. Scheels.  He is handcuffed.  He is up

7    against a door.  The handcuffs appear to be hooked on -- or

8    the handcuffs are hooked on a device hanging over the top of

9    the door, and Mr. Scheels is naked from his waist up.

10   Actually, he's naked in one of the latter pictures.  You can

11   tell he doesn't have any pants on either, and his back is

12   marked red from being whipped.

13            MR. SKUTHAN:  Objection, Your Honor.

14            THE COURT:  Objection.  The objection, I would

15   imagine, is that he's speculating on what is causing the red

16   marks.  Any response from the government on that?

17            MR. RAVENEL:  No.  We don't mind that being

18   stricken.

19            THE COURT:  All right.  I'm going to sustain that

20   objection.  I won't consider that conclusion.

21   BY MR. RAVENEL:

22   Q    Do you know where these photographs are taken?

23   A    Yes, sir.  These were taken inside of Mr. Scheels'

24   bedroom in his home.

25   Q    The next photograph shows what appears to be a handgun

1    in the top right.  Can you describe that photograph?

2    A    Yes, sir.  Mr. Scheels again is handcuffed and a person

3    is pointing what appears to be a gun or what is a gun.  It's

4    an Airsoft gun that was found in Mr. Scheels' nightstand when

5    the investigators first arrived at the house, but the gun is

6    pointed at the back of Mr. Scheels' head.

7    Q    Are there additional photographs of that?

8    A    There are.  There are several.

9    Q    Who do you believe is holding that handgun?

10   A    I believe that was held by Minor Victim One.

11   Q    Why do you believe that?

12   A    Based on -- based on testimony and there are other

13   pictures that show an arm which is consistent with Minor

14   Victim One, and the location where the pictures were taken.

15            MR. SKUTHAN:  Your Honor, again, we don't object to

16   any of these pictures being admitted.  We just object to the

17   officer having an opinion as to what's being shown.  I think

18   the photograph speaks for itself.

19            MR. RAVENEL:  I think he can explain his basis,

20   Your Honor, as to why he believes Minor Victim One is

21   involved in this series of photographs.

22            THE COURT:  Well, I'm going to sustain the

23   objection for now because what he indicated was he thought

24   this was something because of a photo I haven't yet looked

25   at.

```
 1              MR. RAVENEL:  Yes, sir.

 2              THE COURT:  So I'll let you tie that together, but

 3    the objection will be sustained.

 4    BY MR. RAVENEL:

 5    Q     I want to talk about two photographs.  They're placed

 6    directly in front of the EXIF data pages 99 and 100.  If you

 7    look in the top right corner of the EXIF data pages, there's

 8    a number.

 9    A     Okay.

10    Q     What do those two photographs show?

11    A     The photo prior to 99?

12    Q     Right.

13    A     The first is a picture of Minor Victim One and Mr.

14    Scheels' bedroom is in the background, and the second is also

15    a picture of Minor Victim One in the same location.

16    Q     Can you -- can you explain the production time of those

17    two photographs of Minor Victim One with respect to

18    photographs of Douglas Scheels on either side of the

19    photographs?

20    A     Yes, sir.  I included those in this package.  There's a

21    picture taken at 2:08 and eight seconds p.m. of Mr. Scheels.

22    Here again, he's naked, handcuffed, strung up against a door,

23    and that was at 2:08 and eight seconds.

24          Then the picture of Minor Victim One appears at 2:08 and

25    46 seconds.  So 38 seconds later.  The second picture of
```

1    Minor Victim One appears at 2:08 and 58 seconds, which I

2    believe is ten seconds later.

3        And then following the second picture of Minor Victim

4    One at 2:08 and 58 seconds, there's another picture of Mr.

5    Scheels in handcuffs at 2:09 and 40 seconds.  So that was

6    taken 42 seconds after the picture of Minor Victim One.

7    Q    So based on that and other information you've talked

8    about, you believe that Minor Victim One is the one taking

9    those photographs?

10   A    Yes, sir.

11   Q    As well as holding a fake gun to Mr. Scheels' head?

12   A    Holding the gun and, in my opinion, responsible for the

13   whip marks on Mr. Scheels' back.

14   Q    The last photograph right before the EXIF data, page

15   116, what does that show?

16   A    That's a picture, a close-up of Mr. Scheels' wrist.  It

17   shows the handcuff marks from having handcuffs on for the

18   last at least two hours and three minutes, and it was the

19   last image in this series of images.

20   Q    Why do you say "two hours and three minutes"?

21   A    Because the first image recovered of Mr. Scheels

22   handcuffed and being beaten was, I believe I testified, at --

23   I can tell you exactly.

24            MR. SKUTHAN:  Your Honor, we would object to "being

25   beaten."  These pictures speak for themselves.

1          THE COURT:  All right.  The objection again is the

2    characterization of the photos.

3          What's the response to the objection?

4          MR. RAVENEL:  Just based on his testimony so far, I

5    think it's a reasonable conclusion.  Again, we're not at a

6    trial; it's a sentencing hearing.  He's basing his conclusion

7    on what he's seen in these photographs and also what he knows

8    of Mr. Scheels through all the evidence that's --

9          THE COURT:  Well, that hasn't been referenced.  All

10   I know is that he's reaching these conclusions from viewing

11   the notes, which I could do.  So on that basis, the objection

12   will be sustained.

13         If you can lay the predicate for the opinion,

14   that's a different story entirely.  So the objection will be

15   sustained.  I'll come to my own conclusions without any

16   further assistance as to what's on these photos.

17         Feel free to proceed.

18   BY MR. RAVENEL:

19   Q    Why do you mention two hours and three minutes?

20   A    The first image of Mr. Scheels has EXIF data at 12:24

21   and 30 seconds and then the last in this series, the image

22   with the handcuffs, was at 2:27.  So that's two hours and

23   three minutes apart.

24         MR. RAVENEL:  I have no further questions for the

25   witness.

1              THE COURT:  All right.

2              Mr. Skuthan, any cross-examination?

3              MR. SKUTHAN:  Just briefly, Your Honor.

4                      CROSS-EXAMINATION

5    BY MR. SKUTHAN:

6    Q    Agent Hyre, you indicate two photographs that depict

7    Minor Victim One where her face is shown, correct?

8    A    Yes, sir.

9    Q    And in both of those photographs her hands are on top of

10   her head?

11   A    They are.

12   Q    Is she bound in any way?

13   A    As far as I can tell, no, sir.

14             MR. SKUTHAN:  Nothing further, Your Honor.

15             THE COURT:  Any redirect?

16             MR. RAVENEL:  No redirect, Your Honor.  We just

17   offer the exhibit into evidence under seal.

18             THE COURT:  It will be accepted under seal.

19             Feel free to be seated at counsel table.

20             Mr. Ravenel, feel free to -- there are items that

21   are left on the witness table.  If you want to retrieve

22   those, feel free to do so.

23             MR. RAVENEL:  Yes, sir.

24             THE COURT:  All right.  Will the government be

25   presenting any further evidence on their assertion that these

1   additions be on the sentencing guidelines?

2           MR. RAVENEL:  Your Honor, we would just stand by

3   our position in the memo.  We'd also note that there is

4   abundant information in evidence that Mr. Scheels has

5   admitted to with regards to him being a self-mutilator,

6   somebody who discussed self-mutilating with children on the

7   Internet.  We'd ask you to consider that as your foundation

8   for reviewing that exhibit, and we'd ask you to overrule the

9   objection.

10          THE COURT:  Any final argument from the defense?

11          MR. SKUTHAN:  Yes, Your Honor.  Your Honor, I would

12  say that we do not -- just for the record, we don't object to

13  any of the facts submitted in the Plea Agreement relating to

14  pages 18 through 32, and we don't object to any of the facts

15  in the Plea Agreement relating to any of the photographs that

16  this Court just viewed.  I want to make that clear.

17          I think the Court has to realize that when Mr.

18  Ravenel said now the defendant has the benefit of the bargain

19  and he wants to change his tune, as I stated in the

20  objections and as I state to this Court here today, as a

21  lawyer, I have an ethical obligation to make the objection

22  that I think is -- if the facts don't sustain an enhancement;

23  and I did that in two instances, and the government agreed

24  with me in one instance and they did not in the other

25  instance.

1          The only other argument I would make to the Court

2    from a legal perspective is I think it's clear from the case

3    law that there has to be an objective standard.

4          In order to apply 2G2.1(b)(4), a sentencing court

5    must determine by a preponderance of the evidence that an

6    image and material depicts sexual activity involving a minor

7    and portrays conduct that would cause an objective viewer to

8    believe, without regard to the undepicted circumstances of

9    the sexual encounter, that the pictured activity is

10   inflicting physical pain, emotional suffering or humiliation

11   of that minor.  And that's citing to United States versus

12   Corp, C-o-r-p, 668 F.3d, 379, which is a Sixth Circuit case

13   in the materials.

14         Other than that, I have no further argument, Your

15   Honor.  Thank you very much.

16         THE COURT:  Thank you for your argument.

17         I would say the photos that -- Mr. Skuthan would

18   have a point with the photos alone, because without any

19   further context, I can see what's there, but I'm not as quick

20   to connect those dots.

21         However, considering what's on page 32 and the

22   change of plea hearing and the initials on the bottom of page

23   32, let me first make a finding the defense argument has some

24   merit.  I do not believe that Mr. Scheels is going to lose

25   any acceptance of responsibility points based on this

 1    assertion, which I think is a reasonable argument.

 2            However, based on the combination of two things --

 3    the items that were presented by the government in terms of

 4    the sealed photos and what's on page 32 -- I'm going to make

 5    a finding that those points will remain.

 6            The Court adopts the undisputed factual statements

 7    and guideline applications contained in the Presentence

 8    Report.

 9            As to the controverted factual statements and

10    guideline applications, the Court adopts the position of the

11    Probation Office as stated in the Addendum.

12            The Court determines that the advisory guidelines

13    are as follows:  Total offense level 43, criminal history

14    category I, the range -- or there's no range in this case --

15    is 600 months of imprisonment, five years to life of

16    supervised release, there is no restitution at issue in this

17    case that I'm aware of, a 25,000 to $250,000 fine, and a $200

18    special assessment.

19            Mr. Skuthan, I have had a chance to review an

20    entire package that you've submitted to the Court.  Do you

21    have any further evidence -- and this is separate from the

22    moment where I'm going to consider arguments.  Do you have

23    any further evidence you'd like to present at this time?

24            MR. SKUTHAN:  No further evidence.  However, I just

25    want to make sure that the Court has what we submitted under

seal of paragraph 66 through 73, providing background of Mr.
Scheels.  As the Court was aware, we had difficulty getting
the DD-214.  We finally got it a week or so before the
sentencing.

THE COURT:  I had a chance to review that and
that's part of what I was disclosing to both of you, because
those are matters that I'm going to have to consider in open
court.  And I do understand the extent of his service and
which you've submitted to the Court.  I've been able to
absorb that.

MR. SKUTHAN:  I just want to make sure that's also
made part of the Presentence Report, Your Honor.

THE COURT:  I will do so.  Thank you.

MR. SKUTHAN:  Thank you.

THE COURT:  All right.  Will the government be
presenting any evidence in aggravation before we move on to
sentencing arguments?

MR. RAVENEL:  Yes, sir, we will.  We have four
people who will testify pursuant to the Victim Rights Act.

THE COURT:  All right.  And you indicated
previously that at some point you're going to be asking for a
sealed proceeding; is that correct?

MR. RAVENEL:  Yes, sir.

THE COURT:  Is that at this point?

MR. RAVENEL:  Yes, sir, it is.

1          THE COURT:  All right.  I don't know who's going to

2   be called to testify first.  And what specifically are going

3   to be the requests you're making -- we're going to clear the

4   courtroom, obviously.  But are you asking that as each

5   individual testifies, that no other persons be in the

6   courtroom except necessary court personnel?

7          MR. RAVENEL:  And government personnel and

8   personnel for the defendant.

9          THE COURT:  I understand.  So if you want to take a

10  moment to identify the first witness that's going to be

11  testifying, and instruct all other -- just as a general

12  statement, we're going to have to clear the courtroom at this

13  time.  There are going to be four people that are going be to

14  be testifying.  They are going to be coming in one at a time

15  to testify at that stand.

16          Once we complete that portion, the proceedings will

17  be re-opened and everyone else will be welcomed back into the

18  courtroom.

19          So Mr. Ravenel is going to identify at this time

20  who is the person that's going to be testifying first.  And

21  other than defense counsel, the prosecution and all parties

22  necessary in their presentations, I'm going to regrettably

23  have to ask everyone to depart from the courtroom until we

24  complete this part of the sentencing proceeding.

25          All right.  And as you're exiting the courtroom,

```
 1   please, if you know you're one of the four, remain close by
 2   because they're going to be coming out to get you as the need
 3   arises.
 4             As for everyone else in the courtroom, I'm going to
 5   gently ask you to depart from the courtroom and we'll see you
 6   back in just a few minutes.
 7             Mr. Ravenel, I believe one of your -- someone on
 8   that side of the courtroom may have a question for you.
 9             MR. RAVENEL:  It's a member of the media here.
10             THE COURT:  Does the media want to be heard at this
11   time?
12             All right.  Before we hear from any members of the
13   media -- I have a feeling I know what's about to be said --
14   does the government want to be heard on this issue at all?
15             MR. RAVENEL:   I would state, and we stated this, I
16   think this argument is subsumed by our motion for a
17   protective order; but there are instances where Congress has
18   weighed the media's rights to know about a case and those
19   rights are outweighed by the protection of the identity of
20   certain minors, in cases like this one.
21             There's been no successful challenge to the Minor
22   Victim Rights Act.  So that is good law and we're proceeding
23   under that act.
24             THE COURT:  All right.
25             Mr. Skuthan, do you have anything you want to add
```

1 to that?

2    MR. SKUTHAN:  Well, Your Honor, as the Court knows,

3 this was our motion last week.  So we have no objection to

4 closing the courtroom.  We think that would be appropriate to

5 protect the minor victims in this case.

6    THE COURT:  All right.

7    Ma'am, are you an attorney?

8    THE SPEAKER:  No.

9    THE COURT:  Why don't you come forward to the

10 podium for just a moment.

11    All right.  Typically the way this unfolds is that

12 if a proceeding is going to be sealed, then someone will

13 attempt to petition the Court independently, seeking some

14 sort of legal argument to be reviewed by the Court.  As of

15 this date no such filing has been made.

16    So you're not an attorney and you're representing

17 some sort of journalistic entity; is that correct?

18    THE SPEAKER:  Yes.  I'm with Channel 9 WFTV.  I

19 don't know if this makes a difference, but we would not

20 identify any of the witnesses, be it relatives, victims,

21 et cetera; but I ask that we can, you know, listen to the

22 testimony.

23    THE COURT:  I appreciate your concerns, and I will

24 tell you that there is a very distinct dichotomy between what

25 goes on in state court and what goes on here.  The rules are

1  much different.

2          I want to thank you for your thoughtful statement;

3  but in light of the agreement of the parties and very

4  specific law on point indicating what direction I'm to

5  travel, without any further compelling interest from your

6  perspective, I'm going to have to ask you to leave the

7  courtroom.  But thank you, ma'am.

8          So, Mr. Ravenel and Mr. Skuthan, I'm going to ask

9  you to look to see who remains in the courtroom and make sure

10  that we are now in compliance.  I don't know the identities

11  of every single person.

12          MR. RAVENEL:  Everybody on the right side of the

13  courtroom is with the F.B.I. or the United States Attorney's

14  Office.

15          THE COURT:  Mr. Skuthan.

16          MR. SKUTHAN:  Your Honor, with us today is Mr.

17  Espirito, who I identified, a paralegal in our office; and

18  Ms. Villazon, who is an investigator with our office.

19          THE COURT:  All right.  So we're all set.

20  *****

21          THE COURT:  All right.  Bring everyone back in,

22  please.

23          MR. SKUTHAN:  Your Honor, may I take a moment just

24  to go outside?

25          THE COURT:  Sure.

1          All right.  All parties previously present are

2   again present, specifically counsel, the defendant and all

3   parties here in support thereof.

4          Mr. Ravenel, do you have any further evidence you

5   are going to present before we move on to argument?

6          MR. RAVENEL:  No, sir.

7          THE COURT:  All right.

8          Mr. Scheels, if you would be kind enough just to

9   stand there at the table with your counsel, I need to go over

10  something briefly with you.

11         At this point in the proceedings you do have an

12  opportunity, if you would like, to make a statement to the

13  Court.  It's up to you and it's certainly going to be the

14  result of conversations you've had with your attorneys, the

15  substance of which I don't need to hear.

16         But have you had an opportunity to consider whether

17  or not at this time you would like to make a statement to the

18  Court?

19         THE DEFENDANT:  Yes.

20         THE COURT:  All right.  And will you be making a

21  statement?

22         THE DEFENDANT:  Yes.

23         THE COURT:  All right.  Why don't you come to the

24  podium because it'll be easier to have the microphone close

25  by.

1          MR. SKUTHAN:  Your Honor, he's indicated he really

2     has to use the restroom.

3          THE COURT:  All right.  We're going to take a

4     ten-minute break and we'll get started in ten.

5          Court's going to be in recess for ten minutes.

6          (Recess taken from 10:19 until 10:30 a.m.)

7          THE COURT:  All right.  Please be seated, everyone.

8          We're at the moment where Mr. Scheels was going to

9     approach the podium and make a statement to the Court.  If

10    he's ready to do so, I would invite him to approach.

11         MR. SKUTHAN:  Your Honor, thank you for the break.

12         THE COURT:  You're welcome.

13         MR. SKUTHAN:  Take your time.

14         THE DEFENDANT:  I would like to apologize as I am

15    remorseful for my mistakes.

16         Is this a court record?

17         (No response.)

18         THE DEFENDANT:  Are we on record?

19         THE COURT:  Yes.

20         THE DEFENDANT:  Are we on record?

21         THE COURT:  Yes.

22         THE DEFENDANT:  As definitions as it relates to law

23    are only of Black Laws Dictionary.  Anything else is fraud

24    upon the court, without prejudice and with explicit

25    reservations, all rights reserved.

1          Douglas Scheels is not a corporation and not that

2     legal fiction.  I'm a living flesh and blood man created by

3     God in heaven, an American citizen, not bound to obey any --

4     obey an unconstitutional color of law term of art, corporate

5     policy or code; and no courts are bound to enforce them and

6     is ab initio.

7          I answer to the Constitution, the Constitution of

8     my country that I swore to uphold when I became a United

9     States Marine.  God, Corps, country.  It is by that will of

10    God in heaven that God gave me the notion and strength to

11    join and defend my country and succeed in the United States

12    Marine Corps -- Semper fidelis -- to follow God's plan and

13    leave the people in my life that I love -- my mom, my

14    brother, dad and neighbors -- to meet the girl that I would

15    later with her have two of the greatest loves of my life.  My

16    babies are two of the best people on the planet.  Praise

17    which I received by others on how well behaved, kind and

18    intelligent they are, traits that reflect how I raised them.

19          MR. SKUTHAN:  Take your time.  Take your time.

20          THE DEFENDANT:  But I can never put into words the

21    sorrow that I feel and how much I truly apologize for the

22    mistakes that I've made that brought us here, not being the

23    monster I'm betrayed (sic) as.

24          If released this second, you would never hear of --

25    of -- any legal action against me again for I learned my

lessons and actions speak louder than words.

As to my actions at Orange County Corrections, even though I refused accommodations, my actions show that -- show me as a good prisoner, doing such duties as those as a trustee.

I can't change the past, but if I did, I would have maintained the discipline I had in the United States Marine Corps and I wouldn't be here -- be here now.  I can, on the other hand, change how much or how I move forward.  Band-Aids don't fix bullet holes; and if you say "Sorry" just for show, you live with ghosts.  So I can only truly show how much I apologize by facing society and letting my actions speak for my true self.

I don't want to suckle off the teet of society in or out of prison.  I want to become the cog that once functioned in society, making my country great.

Though I do want to apologize to my mom for not being able to give you daily hugs anymore and not being there to help you and take care of you, you shouldn't have to suffer now or in your later years because I made a mistake. I love you.

I apologize to my brother for not being able to help you anymore when you bellow.  I love you.

I apologize to my dad for not being the son that you wanted, not then and not now.  Also, for bringing shame

1  or further shame that this brings to our family name.  I love

2  you.

3       I apologize to my first baby.  I'm going to miss

4  the time we -- we spent at the car meets, car shows and going

5  shopping.  You filled my life with joy.  Just remember not to

6  store up your anger.  It'll tear you up inside.  And to

7  continue to draw and design because you're really good at it.

8       I apologize to my second baby.  I'm going to miss

9  checking your neck, probing your food to see if it's done,

10  and watching you skate.  You filled my life with a spectrum

11  of emotion, but mostly I recall how you made me laugh and

12  continued to build and create things, because you're really

13  good at it.

14       What I'll miss the most from my babies is your

15  hugs, kisses and smiles.  You shouldn't have to suffer and

16  grow up without your daddy.  I don't consent to being judged

17  and you shouldn't let others judge you either, and remember

18  constant viligance (sic).  You don't have to be hurt by it.

19  Stick together and help each other.

20       I love you so much, lower case l, lower case m,

21  lower case l space space space space space/I apologize to --

22       (Discussion off the record between the defendant

23  and Mr. Skuthan.)

24       THE DEFENDANT:  -- to government labeled Victim

25  Two.  I feel so bad.  I hope people aren't being mean to you

1  for what happened and that you continue on to fulfill your

2  dreams, because you are worth so much.

3            (Discussion off the record between the defendant

4  and Mr. Skuthan.)

5            THE DEFENDANT:   I just really feel bad about what's

6  happened.

7            I apologize to government labeled Victim One.   I

8  also hope people aren't being mean to you for what happened.

9            Neither one of you should have been put through

10 this.   Don't let people make you feel bad.   There's nothing

11 wrong with you.   You're perfect as you are, but I did make

12 mistakes that hurt you and I truly apologize.

13            And now as I stand here as a broken shell of a man,

14 whose life will forever end, and as I never intended to hurt

15 anyone, especially them, I plead to you for whatever mercy

16 you have, that you bestow it upon me, that you flex your

17 power and show me your mercy, a mercy like you've never shown

18 no other.

19            May God bless us all.   Thank you.

20            THE COURT:   All right.   Thank you, Mr. Scheels.

21 Feel free to be seated at counsel table.

22            Mr. Skuthan, if you would like to take a moment to

23 collect your thoughts, I would invite you, once you have that

24 moment, to begin your final argument on sentencing.

25            MR. SKUTHAN:   Thank you.

1          May it please the Court.  This is a serious crime.

2    Both Count One and Count Two are serious crimes, and nothing

3    should detract from that here today.

4          As lawyers, we make arguments and are required to

5    make arguments and we're required to argue the law; but these

6    are serious crimes.

7          Mr. Scheels pled guilty to this charge, or I should

8    say these charges, back in June.  There was a 14-page

9    stipulated facts in the Plea Agreement, which we've discussed

10   previously.  He admitted to all those facts.

11         He wanted to put this behind him, for him,

12   obviously, but more importantly, to Minor Victim Number One

13   and Minor Victim Number Two, so that they would not have to

14   come to Court to either testify in a trial or testify in a

15   sentencing hearing, which they have not had to do.

16         The Court is required by law to look at the

17   advisory guidelines and the Court is required to properly

18   calculate the advisory guidelines, and the Court has already

19   calculated the guidelines; and then the Court, as you are

20   aware, must look at all the factors under Title 18, United

21   States Code, 3553(a).  And I will go through several of those

22   factors in asking this Court for a reasonable sentence.

23         The first factor I would like to address is

24   circumstances of the offense.  And I think the Court is aware

25   that because of the protective order, there was a concern

1   about mentioning too much about the offense during the

2   Sentencing Memorandum.  So I relied on what was in the

3   Presentence Report, which in large part came from the Plea

4   Agreement.

5           First off, Mr. Scheels pled guilty to production of

6   child pornography in Count One.  There's no excuses for what

7   he did.  He must be punished.  He will be punished.

8           Congress has deemed this a serious crime and

9   Congress has decided that 15 years is the least amount of

10  time a court could give, and that's a very significant

11  sentence.

12          We'd ask the Court to consider the circumstances of

13  this offense in imposing a sentence below the recommended

14  guideline range in this case.  What makes this Count One a

15  15-year minimum mandatory, this production count, is the fact

16  that a camera was used to take pictures.  That's what brought

17  it into federal jurisdiction.

18          But I think the Court should also be aware, and

19  I've pointed this out in the Sentencing Memorandum, that this

20  is not a case where the pictures entered into the Internet or

21  entered into the marketplace.  It doesn't make the crime any

22  less serious, but the production of child pornography, the

23  reason for that statute, the reason why Congress wanted such

24  a stiff penalty imposed was because they did not want victims

25  to be victimized again and again and again and again.  As one

 1    court phrased it, the slow acid drip of potentially being

 2    exposed to people you never even knew as you try to live your

 3    life.

 4          That did not happen in this case and that won't

 5    happen because of the fact that these images did not enter

 6    into the Internet or enter into what we would call the

 7    marketplace.

 8          So, fortunately, Minor Victim Number One does not

 9    have the possibility of being abused again and again by

10    people looking at the photographs of her in this case; and

11    that's the basis for the federal jurisdiction in this case.

12          Now, identical circumstances.  If the defendant was

13    charged with statutory rape, which is a federal crime as

14    well, if someone were to commit this crime on federal

15    property but not take photographs, if someone were to have

16    sex with a minor of the age of 14 and not take photographs,

17    in other words, identical circumstances of what happened

18    here, the punishment would be far less.  The punishment would

19    be -- under the United States Sentencing Guidelines, it would

20    be 235 to 293 months, which is 19.7 years to almost 25 years.

21          The total offense level for statutory rape is a 22.

22    The total offense level with these facts on the production

23    count is a 42.  That's a huge difference.  It's a very

24    significant difference, and it places Mr. Scheels in a

25    category that goes from 19 and a half to 24 and a half years,

1    all the way up to a life guideline with a 50-year statutory

2    maximum for both Counts.

3              This is not to diminish the crime, but it is to

4    make an argument to the Court that the guidelines in these

5    cases are not valid to the extent that they punish similar

6    conduct in a similar manner, because I think this Court would

7    agree with me that if a person has sex with a minor, a

8    14-year-old on federal property and that crime is a level 22,

9    then I would submit to the Court it's quite extensive to have

10   a level 42 to have the exact same crime but photographs are

11   taken.

12             And I understand that the production count is

13   different, but I also understand that the reason why Congress

14   enacted the statute was, again, because of the marketplace of

15   images, which we don't have in Count One.

16             In turning to the receipt charge in Count Two, this

17   is also a serious crime.  It's a crime because whenever a

18   minor is depicted in images in a sexual manner and it's sent

19   over the Internet and somebody receives it, then, of course,

20   that's a crime.  It's called receipt of child pornography,

21   and Congress has deemed this a very important and serious

22   crime, and in so doing, they made the statutory mandatory

23   minimum five years in prison.

24             But this crime is different than most receipt

25   charges that I think we all see in federal court.  We all

1  have seen numerous child pornography charges, numerous

2  receipt charges.  This one is somewhat different, and it's

3  different for several reasons; and, again, this is not to

4  diminish the seriousness of the crime, but to talk about the

5  circumstances of the offense.

6          The United States Sentencing Commission in 2012

7  released a study of the child pornography guidelines and one

8  of the things that they discussed was that in over 95 percent

9  of the cases involving receipt or possession of child

10 pornography, the images involved prepubescent children.

11         We don't have that in this case.  Why?  Well,

12 because the images were taken of someone who was 16 years of

13 age, and that's only five percent of the receipt charge that

14 we see.

15         In most cases that we see with child pornography,

16 with receipt or possession or distribution, we also have

17 defendants who use search terms.  We're all familiar with

18 them.  We see them all the time.  They are called the Vickie

19 Series.  They are called PTHC for "preteen hard core."

20 There's all sorts of terms that people use when they want to

21 look for prepubescent children and bondage photos on the

22 Internet, and those were not used in this particular case.

23 So that takes this case out of the mainland of the typical

24 receipt charge.

25         Additionally, although the sadistic and masochistic

enhancement does apply as to Count Two, the receipt charge,
there is no argument here, and the government will not make
an argument, I would submit, that there were any depictions
of violence in the images in Count Two.

Are they sexual?  Yes, they are.

Do they constitute the legal definition of what we
call "sadistic and masochistic conduct"?  Yes, they do.

Are they violent?  I don't think anyone can make an
argument that they are.  Again, that does not diminish the
charge itself.

The other thing that's important about the receipt
charge is it started off at a level 22, which is the
appropriate base offense level for all receipt charges; but
because there was no distribution, then it gets reduced by
two levels to the same base offense level as -- well, not the
same as possession but less than distribution, which is a
level 20.

There also is no enhancement here for distribution,
which is usually a two-level enhancement, which we see in
most receipt charges.  Why?  Because there's file-sharing.
It's on the Internet.

In this situation there is no distribution
enhancement.  The items, as serious as they were, were sent
directly to Mr. Scheels.

So we don't have what we typically have and that is

1  a defendant requesting prepubescent images or S&M images or

2  bondage images of young children.

3      There's another factor that the Court can consider

4  in Count Number Two, which, again, it's a crime and it's a

5  serious crime; but we referenced in our Sentencing Memorandum

6  the Federal Statutory Rape Statute.  That's found at Title

7  18, United States Code, 2243.

8      In this case and in the Federal Statutory Rape

9  Statute, a person who is 16 is deemed to have consented to

10 sex.  It's different than the state of Florida; but in the

11 federal statute, a person who's 16 can consent to have sex

12 with an adult.

13      Moreover, and we have two exhibits to -- the first

14 exhibit is the Federal Statutory Rape Statute.  The second is

15 the North Carolina Statutory Rape Statute, where this victim

16 was located.  And this is NCGSA, Section 14-27.7(a), which is

17 statutory rape or sexual offense of a person who is 13, 14 or

18 15 years old.  Again, a person who is 16 years old in North

19 Carolina is deemed to have consented to sexual activity with

20 an adult.

21      So I gave both of those exhibits to the government

22 and your clerk has it right now.  We'd ask that the Court

23 review those or we would submit those to the Court.

24      So Minor Victim Two lives in the state of North

25 Carolina.

1          What Mr. Scheels did was a crime.   There's no

2   dispute about that.   But for mitigation purposes, if an adult

3   person wanted to have sex with a 16-year-old in North

4   Carolina, that would not be a crime, so long as it wasn't

5   forcible.

6          If an adult person wanted to engage in sexual

7   activity with a 16-year-old, that 16-year-old is deemed to

8   have consented, again, so long as it's not forcible.

9          Now, this is not my opinion.   This is not my

10   argument.   This is the law.   The North Carolina legislature

11   determined that that was the appropriate age of consent.

12          Again, it doesn't diminish the crime; but I think

13   the Court has to look at that as a factor here, that a person

14   who's 16 in North Carolina can consent to have sex with

15   someone over the age of 18 and it is not a crime.   It may be

16   inappropriate, but it's not a crime.

17          Now, we'd ask that the Court consider that as a

18   mitigating factor as a circumstance of the offense.   I can't

19   think of anything that would be more mitigating than that

20   fact right there.

21          Finally, as stated previously, the images of Minor

22   Victim Two were contained in the sense that they did not --

23   they were not distributed by the defendant or sent out on the

24   Internet.

25          Finally, as to circumstances of the offense, I'd

ask the Court to review the Presentence Report for another
guideline enhancement, which, again, is appropriately scored.
There's no dispute about that, and that is the enhancement
under Section 4B1.5 of the sentencing guidelines together
with enhancement under 2G2.2(b)(4) and they have to do with a
pattern of criminal activity.

So on pages ten and eleven of the Presentence
Report, paragraphs 32 to 40, the Court has before it Count
One, which is a base offense level of 32; and then in
paragraphs 41 through 45 the Court has before it Count Two,
which has a base offense level of 20.

Now, in paragraph 44, on the receipt Count, the
defendant gets a five-level increase for engaging in a
pattern of activity involving the sexual abuse or
exploitation of a minor.  We do not contest this enhancement.

Later, in paragraph 55, the defendant gets an
additional five-level increase.  This is under 4B1.5(b).
Why?  Because the defendant engaged in a pattern of
prohibited sexual contact.  So the courts have been clear
that you could apply both of these enhancements.

So, again, we're not disputing the enhancements;
but this goes to a circumstance of the offense, because what
ends up happening is on the receipt charge, the defendant
gets an enhancement for engaging in a pattern of activity
involving the sexual abuse or exploitation of a minor, which

1    is basically two or more instances of that.

2            And as I previously submitted to the Court, in this

3    case a minor living in North Carolina can consent to have

4    that type of activity.  Again, that goes to mitigation.  It

5    goes to the circumstances of this offense.

6            But I would also submit that by allowing a

7    five-level enhancement under 2G2.2(b)(4) for Count Two and

8    then the five-level enhancement under paragraph 55 for 4B1.5,

9    though it's sufficient in this case, it creates a huge

10   increase in the defendant's sentencing range.

11           Basically, the guidelines don't make the

12   distinction between the type of conduct that's a pattern over

13   a significant period of time as opposed to what's happened in

14   this particular case.  So I would ask that the Court consider

15   these circumstances of the offense in determining a

16   reasonable sentence.

17           The next thing I would like to discuss is the

18   history and characteristics of Mr. Scheels.  He moved here

19   when he was a young boy with his mother and his brother.

20   They were a very close family.

21           His father was a mail carrier.  He was able to get

22   a transfer here; and he provided for his family financially,

23   but he did not provide for them emotionally.  He was

24   troubled.  He suffered from bipolar disorder and he was

25   depressed.  And one day when Mr. Scheels was at home, his

father committed suicide by shooting himself in the head.

Mr. Scheels never got any counseling.  He never got any treatment.  He basically was told to suck it up and move on, and he did; but I think as some of the testimony we've heard here today, when someone experiences trauma as a young person, it can stay with them for a long time.

He went to Seminole County schools, was in an exceptional education program, received his high school diploma from Lyman High School, and then joined the military, volunteering to serve in the United States Marine Corps and did serve for five years and served with honor.

While he was in the Marine Corps he received a Good Conduct Medal, a Certificate of Commendation, a Sea Service Deployment Ribbon, a Letter of Appreciation, the Marksman Rifle Badge; and he was honorably discharged after serving for five years.

While in the Marine Corps he met his wife.  They met in June of 1999 and they married in July of 1999.  They had two children, and they went to Japan and other places while serving.

After serving for five years, they decided to move to Florida; and after living with his mother for a year, they got their own home.

And for the next year Mrs. Scheels worked, primarily as the financial earner in the family, and Mr.

Scheels homeschooled the children and took care of the children.

And, obviously, people have different opinions about his homeschooling abilities; but I think the social worker that testified on behalf of the government did indicate that Minor Victim Number One was a bright student, was an intelligent student, and that she talked about the education that her father had given her.

We have no information or no evidence that Mr. Scheels had nothing but a loving relationship with his son.

He didn't drink.  He didn't smoke.  He didn't do drugs in front of the children; and by all accounts, up to a certain point, he was a good father.

I'd ask the Court to pay close attention to the report that we submitted from the Veteran Affairs Administration that in 2009 -- and this is part of the sealed document -- Mr. Scheels visited the V.A. and his doctor said that he needed to go up and talk to someone to get some mental health treatment.

As is stated in the report, "My doc downstairs thought it would be a good idea for me to come up here."

He was diagnosed with a major depressive disorder. They talked about the fact that he may be suffering from TBI, traumatic brain injury, from a head injury he had while he was in the service, and he had a cognitive disorder secondary

1    to head trauma; and all these things were not being treated.

2    They also indicated that he needed to address his mental

3    health issues.

4            So we don't know what happened with Mr. Scheels,

5    but we know that he did commit this crime and that there's no

6    excuse for it and that he committed it not only against Minor

7    Victim Number One but also against Minor Victim Number Two.

8            I would ask the Court to look at the fact that when

9    the social worker testified, she indicated that Mr. Scheels'

10   daughter identified very good things and very good memories

11   that she had of her father as well as the fact that he

12   provided her with a good education.  Obviously, that doesn't

13   -- that pales in comparison to the crime.

14           Finally, I'd like to discuss with the Court the

15   factors of protecting the public, promoting respect for the

16   law, providing just punishment and deterrence, and providing

17   for adequate medical care.

18           I think it's a tricky proposition to bring to the

19   Court's attention other cases involving the same charges

20   because this Court has the sole discretion to decide an

21   appropriate and reasonable sentence based on all the factors.

22           And I understand that no two cases are alike and

23   the Court has to pass sentence that the Court feels is

24   appropriate in this case; but I would like the Court to just

25   take note of two other cases.  In one case, which was

1  prosecuted here in the Middle District of Florida, Mr. Irey,

2  I-r-e-y, which is pointed out in the Sentencing Memorandum,

3  Mr. Irey involved a case where he raped up to 40 children

4  forcibly.  He videotaped this.  He uploaded it to the

5  Internet.

6          He did so much of this that he created his own

7  series called the Pink Wall Series.  Many of the victims were

8  prepubescent and most of them suffered horribly physical pain

9  at the hands of Mr. Irey.

10         He subsequently was sentenced in this district to

11 30 years in prison, and the Eleventh Circuit Court of Appeals

12 called it the worst of the worst that they had ever seen.

13         This is not to say that Mr. Irey's case is

14 something that the Court should discuss in imposing this

15 sentence, but I do think it just shows how the guidelines are

16 not adequate in treating different types of offenses and

17 different types of crimes that fall into the child

18 pornography category.

19         THE COURT:  Not for the purpose of offering any

20 criticism in terms of the government's decision-making here,

21 but doesn't that really come down to a charging decision?

22         You gave me four names:  Irey, Devlin, Amen and

23 Bale.

24         MR. SKUTHAN:  That's correct.

25         THE COURT:  And I understand your argument and your

1   point is well taken; but it really in many of these cases

2   comes down to how many counts, different counts the defendant

3   is going to agree to enter a plea to versus what you could

4   argue is a horrible or more horrible monster being permitted

5   to enter a plea to a single count of many counts on an

6   indictment, thereby setting a maximum penalty that is already

7   beneath what you would argue a less-culpable person is

8   exposed to.

9           MR. SKUTHAN:  I understand.

10          THE COURT:  So, I mean, I understand.  I mean, I

11  just don't want to get in the area of stepping on the

12  executive branch and openly criticizing any decisions,

13  because you're right.  You wouldn't have to make this

14  argument if your client had entered a plea to a single count,

15  but that's not what happened.

16          MR. SKUTHAN:  I agree.  The other case, and just

17  briefly, everyone knows him as the Subway Guy, Jared Fogle,

18  he pled guilty to distribution and receipt of child

19  pornography and also having sex, crossing state lines with

20  minors who were 16 years old and paying for that sex.  In his

21  Plea Agreement the government is seeking no more than 151

22  months, which is approximately twelve and a half years; and

23  Mr. Fogle has the right to appeal any sentence above 151

24  months.

25          I included the Plea Agreement in the Sentencing

Memorandum just because I think it's illustrative of, again,

the guidelines not being adequate in these type of cases;

that someone that engages in that type of activity is only

looking at twelve and a half years as far as what the

government is recommended to the Court.

        And I won't go into the other cases because I know

the Court has read the Sentencing Memorandum, but I do think

that's important for the Court to understand as a part of my

argument.

        At the end, the Court has to impose a sentence that

promotes respect for the law, that provides just punishment,

that affords deterrence.  And the government is asking you to

sentence Mr. Scheels to life in prison without parole.

        Now, technically, they're not doing that, because

the maximum in this case is 50 years.  So, technically, it's

not asking for a life sentence.  However, Mr. Scheels is 40

years old, and if he is given 50 years, that's essentially a

life sentence.

        There are three decisions Mr. Scheels had at the

beginning of this case.  The first decision was he could have

went to trial and afforded himself every opportunity to

contest the charges.

        Another decision he could have made was to plea

straight up.  If you plea straight up, as the Court is aware,

you plea to more charges, but you don't admit to all the

1    facts that are in the Plea Agreement.

2            Mr. Scheels knows what he did was wrong; and in his

3    somewhat disjointed presentation to the Court, I think the

4    Court could see the true remorse and sorrow that he has for

5    what he did to Minor Victim Number One and Minor Victim

6    Number Two.

7            He took the third route and that is he pled guilty.

8    And the government would argue that, well, he got the benefit

9    of only getting 50 years as opposed to perhaps 80 years; but

10   he pled guilty so that this would be behind him, so that his

11   daughter and Minor Victim Number Two could go on with their

12   lives.  And as the social worker testified, it would have

13   been detrimental or it would have delayed the recovery of

14   Minor Victim Number One if she would have had to have come

15   and testified in trial.

16           I think we have a notion under the sentencing

17   guidelines that people that plead guilty and are remorseful

18   should get a benefit for that.  And in this case, there was

19   no trial.  There was no plea straight up.  There was a plea

20   to an agreement and we know why he did that.

21           So I would submit to the Court that someone that's

22   done what Mr. Scheels has done in this case, given the

23   circumstances of the offense, given his background, and given

24   his decision to plead guilty, that I think a 50-year sentence

25   in this case would be unreasonable.

1    I think a sentence of 20 years would send a message

2    to people in society that if you do this, you're going to go

3    away for 20 years.  That's pretty much the rest of someone's

4    life.  It would promote respect for the law and it would

5    provide just punishment and it would afford deterrence.  It

6    would put someone in prison for two decades, and it would

7    afford general deterrence in letting people know that two

8    decades in prison is a significant period of time.

9    The Court should also, I would request, take into

10   account that he waived Indictment, pled to an Information,

11   and threw himself on the mercy of the Court.  I don't believe

12   a person that does that should get the same sentence as

13   somebody who takes the case to trial.

14   The Court has to impose a sentence that's

15   reasonable.  We respect the Court's decision, whatever it is;

16   but we think a reasonable sentence in this case would be well

17   below the 50 years that the government is requesting, for all

18   the factors outlined not only in the Sentencing Memorandum

19   but in my presentation here today to this Court.

20   Thank you very much.

21   THE COURT:  I have a quick question, and this is

22   more about the construction of a potential sentence.  Are you

23   opposed per se to the request by the government for a

24   consecutive time or is that a non-issue for you, as long as

25   the request that you're making ends up with a total sum of

1    20?

2            So is it inconsequential for you whether it's

3    consecutive or concurrent so long as your recommendation is

4    however you construct it, construct it?  We're requesting 20,

5    consecutive or concurrent, it doesn't matter?

6            MR. SKUTHAN:  That would make no difference.

7            THE COURT:  All right.  Thank you, Mr. Skuthan.

8            MR. SKUTHAN:  Thank you.

9            THE COURT:  Would the government like to make their

10   sentencing argument?

11           MR. RAVENEL:  Yes, sir.  Your Honor, in 1997 the

12   defendant was trained by the United States Marine Corps, in

13   the words of General Mattis, to be no greater friend to

14   America and her allies, no worse enemy to her foes.

15           What he did was become somebody quite different.

16   He became an enemy but not to America's foes; he became an

17   enemy to America's families and America's children.

18           He was a wolf in his own home.  He was a monster

19   in his neighborhood, in his home; and when that wasn't enough

20   to satisfy him, on the Internet.  He didn't just seek his own

21   destruction; his destruction was tethered to the futures of

22   children.

23           Make no mistake.  The mechanism of destroying the

24   children was a sexual mechanism but the destruction was

25   complete:  Spiritually, morally, socially, in all ways that

he could destroy these children, he did.  And he sought to and he intended to.

Unlike the M16 he was trained to use in Parris Island in 1997, the tools of his crimes weren't physical weapons.  They were isolation.  They were secrecy.  They were humiliation.  They were separation from parents and authority figures.  Everything was constructed to get these kids alone and separate from their support structure, and that's what he did.

You know that from Minor Victim Two, the light is out in her eyes; and the person that testified for her today just wants the light back.  But the years are gone.

You know that Minor Victim One simply will not or cannot remember after 2011, a time when that child would have been ten or eleven years old.  You know that that child suffers nightmares.

You know from the facts in this Agreement that he sought out additional children.  At least one of them has been termed "Minor Victim Three" in the Plea Agreement.  But he sought out additional children.  He sought to groom them. He used long hugs with the children.  He used sexual talk. He sensitized them to sexual behavior long before they were ready.

He separated them from their families.  He isolated them.  His appetite wasn't served just in his own home.  It

wasn't served in his own neighborhood.  It can only be served
on the Internet.

He sought out, he spoke to children and encouraged
self-mutilation.  He asked for pictures of self-mutilation
from the children and he sent his own pictures.

He used Daddy's Rules, which is spelled out in the
Plea Agreement, which is -- it's no less than an unholy,
demonic series of rules that he would impose upon children.

He had one child enter into some unholy pack where
that child agreed to serve him and to obey him and to have at
his disposal her body and her mind.

Counsel has talked about the guidelines not being
fair.  The guidelines don't take into account whether it's
one victim or two or three or four or five or six, seven,
eight, nine, ten or in this case eleven actual or intended
victims.  One in the house, one in North Carolina, another in
the neighborhood and eight more he tried to victimize on the
Internet, it does not take into account that.

Counsel talks about remorse.  The beginning of his
little speech was sovereign citizen talk, playbook sovereign
citizen discussion, intended to basically be the last trick
from the defendant on the Court and on the law enforcement
community.  Referring himself as a corporation, asking if
this is a court of record, refusing to identify himself,
reading out his signature, all sovereign citizen playbook

```
 1    discussion intended to remove himself from culpability at
 2    some later stage.
 3            In this case he's violated society's trust so
 4    completely, so utterly that he can never be trusted in a free
 5    society.  The harm he's caused, the further wickedness he
 6    intended justifies a guideline sentence.  The nature of his
 7    crime, his own characteristics, the need to protect the
 8    public and, most importantly, the need to impose a just
 9    punishment requires the 600-month sentence we're asking for.
10            Thank you, Your Honor.
11            THE COURT:  All right.  Thank you.  I'm going to
12    take 20 minutes to deliberate and consider and collect my
13    thoughts, and we'll get started in 20 minutes.
14            Court's in recess.
15            (Recess taken from 11:16 until 11:45 a.m.)
16            THE COURT:  Please be seated, everyone.
17            I'm going to read a statement into the record and
18    then we are going to move on with the actual sentencing.
19            Upon my review of the specific facts and
20    circumstances of this case, per the many filings post-plea,
21    it is my view that you, Mr. Scheels, are and continue to be
22    an extremely dangerous person.
23            I hope the many attending this proceeding
24    understand and accept the fact that all persons in our system
25    of justice must have zealous representation.  After all,
```

history has revealed that not all persons charged with crimes

actually committed those crimes.  Even where, as here, a

defendant pleads guilty, then seeks mitigation or leniency at

sentencing, they are entitled to representation.  I would

expect no less from any defense counsel.  So submitting a

military record in the pursuit of mitigation is both

appropriate and necessary.

One witness said it best when describing the

victims here as crushed souls.

To the victims, I hope you understand that you're

not at fault for what happened.  You are better than what was

done to you, and your ability to rise above it will serve as

a beacon to other victims.  You can show them that this, the

worst experience of your life, will not limit or define you.

While I fully consider any matters brought before

the Court leading up to and including sentencing, those

carefully choreographed presentations must be viewed in the

context of the charged misconduct.

First and foremost, I address the letters written

by family and friends on Mr. Scheels' behalf.  Every single

letter references possession and/or receipt of child

pornography.  Nowhere in those letters do the authors profess

a true understanding as to the entirety of your alleged and

now-proven criminal misconduct.

I understand and have also considered your

arguments on sentencing disparity.  The technique of listing

past cases with arguably more culpable defendants and arguing

for a downward variance is not a new strategy; but it seems

to seek a voluntary abandonment of independent judicial

discretion in favor of just trying to replicate what other

judges have done in different cases, and therein lies the

problem.  All cases are different.

These types of cases are all troubling in different

ways but this one particularly so.  One common thread that

binds every culture around the world and is even shared

amongst wild animals in their natural habitat is the idea

that parents protect their offspring.  It is a basic tenent

of humanity that binds us together.

In many cases involving the most violent and

dangerous offenders, one can often point to a tenderness or

some display of humanity in a family circumstance.  There is

merit in the idea that if one loves and protects their

children, there is some good in them and at least a starting

point towards rehabilitation.

People often behave well while confined or better

themselves in anticipation of eventually reconnecting with

family members during or after incarceration.

Mr. Scheels, you have exhibited no such humanity.

Your words post-arrest and your actions constituting this

crime weigh heavily on this Court.  Your wanton pursuit of

self-gratification, even at the expense of your own

offspring, is what makes this case so shockingly

reprehensible.  That single variable is what makes this case

so different and your behavior so troublesome.

        You have not simply committed a crime; you have

violated one of the most basic tenents of humanity.  As I

peer through this window into your soul, I can find nothing

that you hold dear.  No one, no person, no child, no loved

one, no family member is or will be safe around you.

        You're also a Marine.  Earning that title is a

difficult and challenging journey.  It is to be commended on

every level, but it is more than just earning a title.  It

was supposed to be your responsibility to comport yourself in

a manner befitting the highest standards and traditions of

the Marine Corps.  Men and women have died wearing that

uniform, protecting those principles.

        I'm not sure it matters at all to you, but you have

failed yourself and your fellow Marines, past and present.

And your attempts to assert some sort of ambiguous sovereign

citizen comment during your statement is entirely consistent

with the valuation of the Marine Corps and further evidence

of the fact that you are and continue to be a danger.

        I do believe you are filled with regret, but we

certainly do not see eye to eye as to why.  I think the

danger you pose and will continue to pose can be best

1    illustrated in your summarized statement to the F.B.I. as

2    indicated on page 29 of your Plea Agreement, quote:  "It

3    should not be illegal for an adult to have sexual contact

4    with a child as long as it is not forced and the child

5    consents.  Any psychological harm to Minor Victim One was the

6    fault of law enforcement efforts with regard to stopping his

7    sexual abuse of Minor Victim One.  Scheels' actions with

8    Minor Victim One did not cause any harm," end quote.

9            So, Mr. Scheels, please come forward to the podium

10   with your counsel.

11           The Court has asked the defendant why judgment

12   should not now be pronounced; and after hearing the

13   defendant's response, the Court has found no cause to the

14   contrary.  The parties have made statements in their behalf

15   or have waived the opportunity to do so, and the Court has

16   reviewed the Presentence Report.

17           Pursuant to Title 18, U.S. Code, Sections 3551 and

18   3553, it is the judgment of the Court that the defendant,

19   Douglas Scheels, is hereby committed to the custody of the

20   Bureau of Prisons to be imprisoned as follows:  As to Count

21   One, 360 months; as to Count Two, 240 months.  These periods

22   of confinement will run consecutive to each other.

23           Upon release from imprisonment, you shall serve a

24   life term of supervised release.  The term of life as to

25   Count One and Count Two shall run concurrently.

1      While on supervised release, you shall comply with

2  the standard conditions adopted by the Court in the Middle

3  District of Florida.

4      In addition, you shall comply with the following

5  special conditions:  You shall participate in a mental health

6  program specializing in sexual offender treatment and submit

7  to polygraph testing for treatment and monitoring purposes.

8  You shall follow the probation officer's instructions

9  regarding the implementation of this court directive.

10     Further, you shall contribute to the cost of such

11 treatment and/or polygraphs, not to exceed an amount

12 determined reasonable by the probation officer based on your

13 ability to pay or the availability of third-party payment and

14 in conformance with the Probation Office's sliding scale for

15 treatment services.

16     You shall also register with the state sexual

17 offender registration agencies in any state where you reside,

18 visit, are employed, carry on a vocation or are a student,

19 and as directed by your probation officer.

20     The probation officer shall provide state officials

21 with all information required under Florida's Sexual

22 Predicator and Sexual Offender Notification and Registration

23 Statues and/or the Sex Offender Registration and Notification

24 Act, which is Title I of the Adam Walsh Child Protection and

25 Safety Act of 2006.

1          Your probation officer may further direct you to

2     report to these agencies personally for required additional

3     processing such as photographing, fingerprinting and D.N.A.

4     collection.

5          You shall have no contact with minors -- and a

6     "minor" is defined as a person under the age of 18 -- without

7     the prior written approval of your probation officer; and you

8     shall refrain from entering into any area where children

9     frequently congregate, including schools, day-care centers,

10    theme parks and playgrounds.

11         You are prohibited from possessing, subscribing to

12    or viewing any images, videos, magazines, literature or other

13    materials depicting children in the nude and/or in sexually

14    explicit positions.

15         Without prior approval from your probation officer,

16    you are prohibited from either possessing or using a

17    computer, including a Smartphone, a hand-held computer

18    device, a gaming console or an electronic device capable of

19    connecting to an online service or an Internet service

20    provider.  This prohibition includes a computer at the public

21    library, an Internet cafe, your place of employment or an

22    educational facility.

23         Also, you are prohibited from possessing an

24    electronic data storage medium, including a flash drive, a

25    compact disk or a floppy disk, or using any data encryption

technique or program.

If approved to possess or use a device, you must permit routine inspection of the device, including the hard drive and any other electronic storage medium, to confirm adherence to this condition.  The United States Probation Office must conduct the inspection in a manner no more intrusive than necessary to ensure compliance with this condition.

If this condition might affect a third party, including your employer, you must inform the third party of this restriction, including the computer-inspection provision.

You shall submit to a search of your person, residence, place of business, any storage units under your control, computer or vehicle conducted by the United States probation officer at a reasonable time and in a reasonable manner based upon reasonable suspicion of contraband or evidence in violation of a condition of release.

You shall inform any other residents that the premises may be subject to a search pursuant to this condition.  Failure to submit to a search may be grounds for revocation.

You shall provide the probation officer access to any requested financial information.

The defendant, having been convicted of a

1  qualifying felony, shall cooperate in the collection of

2  D.N.A. as directed by the probation officer.

3          The mandatory drug testing requirements of the

4  Violent Crime Control Act are imposed.

5          The Court orders the defendant to submit to random

6  drug testing, not to exceed 104 tests per year.

7          Based on the financial status of the defendant, the

8  Court waives imposition of a fine.

9          There are pending forfeiture matters to consider

10  and that'll be taken up in writing.

11          Is that correct, Mr. Ravenel?

12          MR. RAVENEL:  Your Honor, we'd ask that you include

13  forfeiture in the judgment and enter a final order of

14  forfeiture.  You've entered a partial order at Document 47.

15          THE COURT:  Does the defense want to be heard on

16  that final order of forfeiture being requested by the

17  government?

18          MR. SKUTHAN:  One moment, Your Honor.

19          (Discussion off the record between Mr. Skuthan and

20  the defendant.)

21          THE COURT:  Just to make sure we have a clean

22  record, Mr. Ravenel, I'm going to instruct you to go on ahead

23  and submit your request for final order and I'll give the

24  defense an opportunity to respond in writing, if they choose

25  to do so.  He may wish to discuss this further with his

1  client.

2         MR. RAVENEL:  My only concern, Your Honor, is I've

3  been advised that the order of forfeiture needs to be

4  included in the judgment, and that, I assume, will be filed

5  shortly after this hearing.

6         THE COURT:  I'll wait on signing the final judgment

7  and sentence to give you that opportunity; but it seems to

8  me, reading body language, I don't think it's a decision that

9  the defendant is ready to make instantaneously.  I think by

10  the time that rolls around to me, and it'll be a week, we'll

11  be able to take care of that matter.

12         MR. RAVENEL:  Yes, sir.  Thank you.

13         THE COURT:  It is further ordered the defendant

14  shall pay the United States a special assessment totaling

15  $200, that's $100 per count, which shall be due immediately.

16         After considering the advisory sentencing

17  guidelines and all the factors identified in Title 18,

18  U.S. Code, Sections 3553(a)(1) through (7), the Court finds

19  that the sentence imposed is sufficient, but not greater than

20  necessary, to comply with the statutory purposes of

21  sentencing.

22         The Court has accepted the Plea Agreement because

23  it is satisfied that the Agreement adequately reflects the

24  seriousness of the actual offense behavior and that accepting

25  the Plea Agreement will not undermine the statutory purposes

1   of sentencing.

2           The Court having pronounced sentence, starting with

3   the defense, does the defendant have any objections to the

4   sentence or the manner in which the Court imposed or

5   pronounced the sentence other than those previously stated

6   for the record?

7           MR. SKUTHAN:  Yes, Your Honor.  We would argue that

8   it's procedurally and substantively unreasonable, the

9   sentence.

10          THE COURT:  All right.  Thank you, Mr. Skuthan, and

11  that is properly preserved for appellate review.

12          Does the government have any objection?

13          MR. RAVENEL:  No, sir, we do not.

14          THE COURT:  The defendant is hereby remanded to the

15  custody of the U.S. Marshal to await designation in the

16  Bureau of Prisons.

17          This is an issue that often comes up at this point.

18  Are you going to be making any special request that you want

19  reflected in the judgment and sentence with regard to the

20  defendant's housing?

21          MR. SKUTHAN:  Yes, Your Honor.  The defendant has

22  his mother, who lives in Central Florida.  She's getting

23  older.  She's present in the courtroom and has stood behind

24  him throughout this entire process.

25          His only brother, his only sibling, also lives in

```
1    the Orlando area.

2            The defendant, as indicated by the V.A. records,

3    suffers from a major depressive disorder, and it would

4    benefit him if he would be close to his mother and to his

5    brother.

6            THE COURT:  Does the government have any objection

7    to that specific request going in the judgment and sentence?

8            MR. RAVENEL:  No, sir.

9            THE COURT:  And with regard to your Plea Agreement,

10   it seems to me that it contemplates my dismissing Counts One

11   through Three of the original Indictment.  Is that your

12   understanding?

13           MR. RAVENEL:  Yes, sir.  We'd make that motion now,

14   Your Honor.

15           THE COURT:  All right.

16           Counts One through Three will be dismissed, per the

17   Plea Agreement.

18           And the judgment and sentence is to reflect that,

19   if at all possible, the defendant is to be housed at a

20   facility as close to Central Florida as possible for the

21   purposes of maintaining contact with a sibling and a very

22   sick and age-advanced mother; and we need to make sure it

23   reads that specifically.

24           To the extent permitted by your Plea Agreement, you

25   have the right to appeal from this sentence within 14 days
```

```
 1    from this date.  Failure to appeal within the 14-day period
 2    shall constitute a waiver of your right to appeal.
 3            The government may also file an appeal from the
 4    sentence.
 5            You have also been advised that you're entitled to
 6    the assistance of counsel in taking this appeal.  If you
 7    cannot afford a lawyer, one will be provided for you.
 8            If you're unable to afford a filing fee, the clerk
 9    of court will be directed to accept the notice of appeal
10    without such fee.
11            Is there anything further from the government?
12            MR. RAVENEL:  No, sir.  Thank you.
13            THE COURT:  From the defense?
14            MR. SKUTHAN:  No, Your Honor.  Thank you.
15            THE COURT:  All right.  The Court's in recess.  And
16    I'll be here for a minute.  Feel free to be seated.
17            Mr. Skuthan, do you need a moment to talk to your
18    client before they take him away, because it looks like
19    that's what they'd like to do?
20            THE U.S. DEPUTY MARSHAL:  Your Honor, I would like
21    to take him downstairs.
22            THE COURT:  All right.
23            Mr. Skuthan, my question is to you.  Would you like
24    to speak to him before they take him out of the courtroom?
25            MR. SKUTHAN:  Yes, Your Honor.
```

1          THE COURT:  All right.

2          Leave him at counsel table for a few minutes, and

3     then we'll take him downstairs.

4          Miss Darleen, here is the evidence that's been

5     submitted.

6          Please be seated in the courtroom.  Court's going

7     to be in recess.

8          (Proceedings concluded at 12:00 p.m.)

9               - - - - - - - -

10                Reporter's Certification

11    I certify that the foregoing is a correct transcript from the

12    record of proceedings in the above-entitled matter.

13                        s/Diane Peede, RMR, CRR
                          Official Court Reporter
14                        United States District Court
      Date:  January 19, 2016    Middle District of Florida
15